BREAUX, J.
Defendant, John Ottman, died objections to the granting of a certiorari or review in this cause because plaintiff, as he avers, had not truly exhausted every remedy open to him below, and had not made every effort to secure relief at the hands of the honorable Court of Appeal before applying here for a writ of review; that he failed to comply with the requirement of the amendment to rule 12 of the Supreme Court (26 South, vii); that, although he presented a petition for a rehearing to the Court of Appeal, he submitted no brief or argument in support thereof, as exacted by rule 10 of that court (21 South, x), and so forfeited his right to have his application considered or granted.
Defendant also urges preliminarily that the cause presents no unusual feature which renders it proper to issue a writ of review.
We took up the objections in the inverse order, and arrived at the conclusion that the cause presented issues which rendered it proper to issue a writ of certiorari. •
We have not found it possible to agree with learned counsel for defendant, who insist that applicant’s petition be dismissed on that ground.
We come to the objection that applicant had not truly exhausted every remedy open to him before the Court of Appeal when he filed his petition for a writ of certiorari or review.
With reference to the facts which have given rise to defendant’s objection, it appears that the applicant filed a petition before the Court of Appeal for a rehearing, and in the prayer he asked for a delay of live days, wherein to file a brief in support of his application for a rehearing.
Applicant failed to file a brief within the five days, and the application for a rehearing was denied.
Although counsel failed to file brief In the Court of Appeal, we do not consider it ground to dismiss applicant’s petition addressed to this court. Counsel conformed with rule 12 of the rules of this court by filing the application for the writ of certiorari and review.
The Court of Appeal did not dismiss the application for a rehearing on the ground that no brief had been filed in accordance with its own rule.
We must assume that the questions involved were reconsidered by the Court of Appeal on application for rehearing, and that after reconsideration the application for a rehearing was refused.
"At any rate, we must hold that our rule had been complied with, as application for rehearing was filed in due form and overruled. Whether applicant failed to sustain it with proper and full argument does not suggest itself as ground sufficient, under our rule, to dismiss applicant’s petition.
The objections of the defendant are overruled.
On Additional or Second Motion to Dismiss.
(Jan. 18, 1904.)
We take up the last motion filed in this cause, and afterward we shall go back from the issues it presents to the other issues of a prior date.
This last motion was for a rehearing, and was filed March 30; 1903. It sets forth, in substance, that the plaintiffs in the cause “failed to comply with the mandate of section 2 of Act 191 of 1898, p. 437, by filing with their petition for the writ a copy of the original petition and answer, or other pleading in the case; said provision being mandatory and legislative, and not within the province of this honorable court to waive or ignore.” Italics ours.
The prayer reads “that the opinion and decree of this court declining to recall or dismiss the writ of review issued herein be set aside, and a rehearing be granted upon petitioner’s application for such recall or dismissal.”
The court said that there had been prematurity in deciding the case, and for that reason the court recalled the decision which had been handed down.
The application for the writ was filed and the rule nisi was granted on the 1st day of February, 1903. January 14th of that year (before the writ nisi had been issued) defendant filed an objection to a writ of review for the reason that plaintiff had not exhausted every remedy open to him below, and had *733 not made every effort to secure relief at the ■hands of the Court of Appeal, before applying to the Supreme Court for a writ of review; that he, relator (opponent charged), had failed to comply with the requirements of amendment to rule 12 of the Supreme Court (26 South, vii), for he presented a petition for rehearing to the Court of Appeal, but did not follow it up with a brief or argument in its support, as required by rule 10 of the Court of Appeal, and thus forfeited his right to have his application here considered and granted.
February 17, 1903, defendant, through counsel, reiterated the grounds before stated, and added that plaintiffs failed to file with their application for writ of review the copies of the pleadings, petition, answer, etc., in the cause, as required by section 2 of Act 191 of 1898, p. 437.
We return to the motion above noted, filed on the 14th day of January, 1903, only to direct attention to the fact that this motion .does not raise the objection that defendant had not brought up a copy of the petition and answer in the case.
The opinion of the Court of Appeal, as originally rendered, and also a copy of the minutes showing that court’s actions on rehearing, were annexed to defendant’s petition, setting forth the facts in detail, but the original petition and answer were not annexed.
This was not urged in the motion filed on the 14th of January, 1903. '
The question as to the point urged in the motion of January 14, 1903, came squarely upon the issue whether applicant had exhausted his remedy on rehearing by not filing a brief in support of his application for a rehearing before that court, as required, opponent says, by rule 10 (21 South, x).
The issue was duly considered upon the issues presented, and Justice Monroe, as the organ, issued the rule nisi, and ordered up the papers, upon the issues as presented in the motion of the 14th January, 1903, and, in effect, passed upon the objection urged that applicant had not filed a brief on rehearing.
The amended rule 12 of this court, to which plaintiff refers, declares: “When application is made to this court by one of the parties to a suit in one of the Courts of Appeal for the writ of certiorari to review its judgment in such suit, if this court deems the showing sufficient, the certiorari will issue directing the Court of Appeal to certify the questions of law in the case determined by the judgment, and the findings of fact on which the legal questions arise, and on such return this court will render the decree it deems necessary; or, if deemed requisite, this court will direct the entire record to be transmitted and render such decree as it may deem required; whether considered on the return or the record, the decree of this court will be binding on the Court of Appeal and the mandate of this court will issue accordingly; before any application to this court is made under this rule the applicant shall file in the office of the clerk of the Court of Appeal a notification addressed to the parties to the suit of the purpose to apply to this court for the certiorari and the affidavit of such filing shall accompany the application.”
These requirements had all been complied with. The amendments to rule 12 had been invoked. The court issued the writ nisi, ■ and ordered the record to be sent up contradictorily with opponent.
Subsequently to this action by the court, the point was raised by opponent' to the application for the suit in motion of February 17, 1903, referred to supra, that Act 191 of 1898 had not been complied with, and an additional ground was presented by opponent to applicant for the suit, relating to the want of copy of petition and answer, and this additional ground in said motion after it (the rule nisi) had already been granted.
Questions of form, when an application in “In re Cases” is presented, receive consideration in all cases. Should the respondent (or the one relator asks to make respondent) file written pleas, or objection to matter of form, they present an issue to be considered in determining whether or not the rule nisi shall issue. After the order has been issued contradictorily, as in this case, the court will not afterward reconsider them.
We do not think that the failure of the applicant to file a brief before that court on rehearing is ground sufficient to here dismiss the application. Rule 10 is not before us.
Moreover, the Court of Appeal urged no objection in deciding on rehearing that its rule had been complied with, regarding the necessity of filing a brief.
*735 The want of such a brief on rehearing in other tribunals is not laid down in the rules of the court regarding writs of certiorari and prohibition as ground to refuse an application for these writs.
We have gone over the grounds again, moved thereto by the brief of able and learned counsel for defendant.
Under our rules, there was no necessity to go over those grounds again, for the following reason: Originally (that is, March 2,
1902) the motion to dismiss had been called and submitted by counsel on both sides upon briefs and papers filed. This motion was overruled some time since, and the court at the same time passed upon the merits.
This decree on the merits the court recalled. There had been no prematurity in the decision, in so far as relates to the court’s refusal to dismiss the application. The overruling the motion to dismiss remained, but, granted that it did not, the grouhd to dismiss cannot be maintained as an original proposition.
Statement of Facts on Application for - Review.
Applicant brought suit against defendant in the district court for slander of title. Defendant met the issue, claimed the property as owner, and thereby became plaintiff as in a petitory action.
Plaintiff obtained judgment against defendant in the district court. On appeal this judgment was reversed, and plaintiff’s demand was rejected.
The questions involved are before us in answer to a rule nisi issued by this court.
Both parties trace their title to the property in controversy to the late Michel Romer, who executed two mortgages thereon—the first in date and rank in favor of his son-in-law as mortgagee, and the other, second in rank, to the defendant, John Ottman.
The taxes due from 1875 and for prior years had not been paid, and in consequence the -property was offered for sale and sold for taxes in October, 1876. At this sale Jean Marie Duran, son-in-law of Romer, and owner of the first mortgage in rank, before mentioned, bought the property.
We are informed that this title received the auditor’s sanction, and that the deed of confirmation was duly inscribed.
After the death of Romer and his wife, Mrs. Duran, their daughter, became the administratrix of their successions. After the death of Jean Marie Duran, in 1877, all the property of his succession, including the property of Romer before mentioned as having-been bought by him at the tax sale, imssed out of the succession, and became the property of Mrs. Duran, who administered the succession of her late husband as natural tutrix of her minor daughter.
She filed an account as legal representative of the succession of her husband, which met with some opposition. In passing upon the questions involved, the late Judge Tissot, of the Second District Court of the parish of Orleans, said, as we gather from the record, that “Duran bought the property in question at a state tax collector’s sale on the 3d of October, 1876, had to enforce the payment of delinquent taxes. Six months after-wards the auditor gave the deed of the 12th of July, 1877 (Exhibit F), which perfected the original adjudication before mentioned.
“I cannot understand that any provision in the Act No. 96 [page 136J, approved April 20, 1877, took away from the auditor the power and authority vested in him by Act No. 47 [page 98] of 1873 to grant a confirmatory title of a sale made under the provisions of the latter statute. I can see no force in the objection that the tax collector’s deed upon which the auditor’s title is founded was not offered in evidence. The auditor’s confirmatory deed, which is in evidence and unassailed, shows that all the formalities of the law were complied with. The collector’s title may be prima facie evidence, but the audit- or’s seems to be absolute deed to the property, and shows that all the requirements of the law have been complied with.”
The foregoing is only persuasive, and not absolutely conclusive. It is quoted as setting forth part of the facts. Thereafter, viz., October, 1880, defendant, Ottman, owner of the second mortgage in rank, instituted foreclosure proceedings against the heirs of his late debtor, Michel Romer. His writ of seizure in these proceedings was recorded in October, 1880. Mrs. Duran enjoined this sale, pleading her right to the property derived by her from her husband’s succession. Ottman, in his answer, denied that she had any right, and averred that the tax titles in question *737 were null and void on a number of grounds alleged.
The injunction was dissolved, and the property was sold. Ottman became the purchaser. He, it seems, paid costs, and retained tile remainder of the price.
After this sale, Ottman became plaintiff in rule against Mrs. Louise Duran, and sought to have the mortgage first in rank, to which we have before referred, and which she owned, canceled. The court refused to sustain the sale, and rejected Ottman’s demand to cancel this mortgage.
Ottman never obtained a proces verbal of sale of the' property, and did not seek to go into possession, and did nothing toward exercising the rights of owner of the property which was adjudicated to him in 1883. He remained silent, without a .deed, for as long as 17 years.
After this suit had been brought, in 1901, he obtained a deed from the sheriff.
The inscriptions were canceled, including (plaintiff asserts) the inscription of the writ of seizure and sale before mentioned. We do not understand that defendant denies that Mrs. Louise Duran bought the property from the succession of her husband in August, i 878, and her possession since. His" contention is that she was in bad faith from the first, and that she is not to be considered as an owner in good faith, and he specially invokes the plea of res judicata against any of the claims she urges to the property. Mrs. Duran sold the property to plaintiff in April, 1S93, at the time she obtained a clear mortgage certificate. It does not appear that plaintiff had notice of any claim of Ottman. There was recorded a notice of seizure, but that, we understand, had been- canceled in fact, and by the effect of the sale in the executory proceedings. Plaintiff had counsel to examine title before she bought.
Plaintiff pleads prescription of three, five, and ten years.
Opinion.
In our view, the important issue is whether plaintiff is bound by the deed of the sheriff to Ottman, although it was not recorded as required by article 697 of the Code of Practice. This article received interpretation by this court years ago, in passing upon a point very similar to the one before us for decision, both as relates to inscription of the sheriff’s deed, and to the notice, which, as in this ease, the defendant urged, had been received by the one who had acquired .an adverse right after the date of the sale, which the sheriff had failed to have recorded until after the former owner had mortgaged it to defendant.
But it was said that the mortgagee knew of plaintiff’s title and possession. This mortgagee had called at the sheriff’s office and inquired if it were true that the property had been sold at public sheriff’s sale. He said that he had lent money on the lot under advice of counsel. He knew about the possession. The court, none the less, decided that “this evidence did not appear sufficient to bring home to plaintiff a knowledge of the sale, and we think he did not err.”
The court’s insistence was that the sheriff’s deed should have been recorded. Murphy v. Jandot, 2 Rob. 379; Lee v. Darramon and another, 3 Rob. 161.
Defendant here substantially urges that the registry and inscription of the notice of seizure in the mortgage office, to effect the constructive seizure, was notice sufficient to plaintiff.
The foregoing decisions go far toward 'sustaining the view that the notice must be very direct, to be taken as an equivalent to registry. The average notice, we imagine, will not suffice. It must be a knowledge on the part of the one invoking want of. registry that amounts to bad faith.
We will later on in our decision again refer to this notice of seizure.
The plea of res judicata invoked by defendant seems to be sustained by the facts. Plaintiff’s vendor years ago failed to sustain her injunction, and the rights she invoked were, it was said, null. As between her and defendant, Ottman, the position of the latter seems unanswerable.
Mrs. Duran remained in possession undisturbed. There is nothing before us to show that plaintiff Mrs. Harrison was aware of the litigation which terminated in a judgment which is now pleaded as res judicata. No adverse title had been recorded up to the date of plaintiff’s purchase from Mrs. Duran, and consequently no right acquired *739 which could be of any avail against third persons.
Under the circumstances, the original proprietor, who had continued in possession for many years, could transfer a title to a third person, which, as to said third person, was binding against one with no recorded title.
An adjudication not reduced to writing and recorded does not affect third persons who knew nothing of the adjudication at the date of purchase, and nothing of litigation such as before mentioned. Moore v. Jourdan, 14 La. Ann. 417.
“An unrecorded sheriff’s deed is of no avail against a subsequent purchaser in good faith.” Perron v. Maillan, 11 La. 489.
This has direct application to defendant's unrecorded deed. It does not occur to us, as relates to the judgment obtained by defendant against Mrs. Duran, that the principle is different. It also must be recorded, or there must be such evidence adduced as to fix notice on any one asserting an adverse right under the guise of being a third person without notice.
“A person is not bound by prejudicial proceeding in which the title of the property is involved, but to which he was not a party.” Boyer v. Sheriff et al., 40 La. Ann. 657, 4 South. 872.
With reference to deeds and their registry, article 2200, Civ. Code, and others in pari materhe, were carefully considered by this court. While the court was not unanimous, the majority laid down the rule that unrecorded deeds are absolutely without effect, save inter partes. It is a rule of property to which we must adhere. Without, a recorded deed, the defendant, under the decision cited infra, was without title, and has no good ground to complain against those who bought from one in possession under title not null, or rendered of no effect by adverse title or right. Baker v. Atkins & Wideman et al., etc., 107 La. 492, 32 South. 69.
The object of registry laws is to make apparent the ownership to property. An owner who neglects to have his property title recorded is exposed to loss when opposed by a title not tainted with fraud, conceived in good faith on the part of the owner of the latter title. The defendant, under the law relative to registry, as against plaintiff, had no title. We could not be justified in holding that he has a title, when the law expressly declares that he has no title against a person in good faith. We must decline to give validity to an unrecorded act as against opposing interests without notice when the purchase was made.
Returning for a moment to the constructive seizure, and notice thereunder by inscription in the mortgage office, which defendant urges was sufficient to place plaintiffs on their guard, and warn them not to-buy.
It is true that property "under seizure cannot be lawfully sold.
The property was not under seizure when it was bought in 1893 by defendant. It had passed by the sale from the sheriff to the defendant. The sale of the property had the effect of releasing it from seizure. The notice had served its -purpose. Besides, there is evidence showing that the inscription of this notice of seizure had been canceled before it was sold to plaintiffs. Defendant in the district court pleaded in the-alternative to be reinstated in his original mortgage rights, and under his writ of seizure and sale. He cites a line of decisions to-which we adhere: New Orleans Ins. Ass’n v. Lebranche et al., 31 La. Ann. 839; Dawson et al. v. Thorpe, 39 La. Ann. 366, 1 South. 686; Spencer v. Goodman & Bradfield et al., 33 La. Ann. 898; Chaffe & Bro. v. Morgan, 30 La. Ann. 1307.
Whatever rights defendant may have are-reserved to him, as against parties other than plaintiffs.
It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal is avoided, annulled, and reversed, it is further ordered, adjudged, and decreed that the judgment of the district court be reinstated and made the judgment of the court, rejecting defendant Ottman’s demand, and recognizing plaintiffs’ ownership of the property in question, and quieting-them in their title as owners in possession.
It is further ordered and decreed that defendant’s rights are reserved to him as stated in the body of the opinion. Costs of the Supreme Court and the Court of Appeal to-be paid by defendant.