BREAUX, O. J.
Plaintiff sued for staves, about to be shipped out of the state, made from trees on the land it claims it owns. The value of the staves it fixed at $5,000.
Plaintiff avers that the cutting of these trees from the land, in addition to the value alleged above, damaged the land in the further sum of $5,000; that defendants are trespassers and wrongdoers; and that they will continue in trespassing unless restrained by injunction.
The clerk of court isued writs of provisional seizure, injunction, and sequestration, and plaintiff failed to furnish bond for an attachment. Pour thousand staves, valued at $2,400, were provisionally seized and sequestered, and defendants were enjoined from trespassing further on the land. Plaintiff, to obtain these writs, did not swear to the absence of the district judge. The bond for the sequestration was made payable to the defendant.
*1026 Plaintiff sought to bring into service nearly all the'conservatory writs.
Friedlaender-Oliven Company, defendants, moved to have the writs of sequestration and provisional seizure dissolved on bond. They executed the required bond and had the property delivered to them. This defendant and I-Ienry Fleming filed an exception to •dissolve the injunction on March 18, 1907, on the ground that no oath was taken showing absence of the' district judge at the time that the clerk issued the order for injunction. They also moved to dissolve, on the ground that plaintiff should be made to elect under what demand it would continue their suit, as it alleged damages for entry upon the land, taking trees therefrom, and the ownership of staves.
[7] We will decide at this time as to the inconsistent demands alleged. The exception and motion has no merit as relates to compelling plaintiff to elect. The other grounds of the exception, having been referred to. the merits, will be considered later.
Peter J. Nevens, on the 15th day of February, 1907, some time after the Tensas Delta Land Company had instituted suit brought suit for staves taken, as he alleges, on his land by defendants. In his petition he alleged that he was the owner of the S. E. %, S. y2 of N. E. V,, section 10; W. y2 of W. y2, E. % of S. W'. %, and W. y2 of S. E. %, section 11; W. V2 of N. W. Vi, section 14; E. y2 of N. E. % and N. W. % of N. E. %, section 15-in T. 22 N., R. 10 E., containing 800 acres, more or less.
He further substantially alleged that these lands he purchased from Mariah J. Galpin, October, 1881; that she inherited it from Thomas Kinney; that, the description being imperfect in the first deed, he obtained another deed with full and complete description. He claimed ownership and possession of the land since October 1881, and averred that he had always paid the taxes and exercised dominion over the property.
The charge was made by Nevens, in his petition, that Friedlaender-Oliven Company, absentees, entered upon and felled a large number, of white oak trees of the value of $5,000, and manufactured them into staves; that they were about to ship them out of the United States; and that he is the owner. He prayed for a writ of sequestration and for a writ of attachment. The writs were issued. He qlso claimed damages in the sum of $2,000 and interest.
The necessary bonds having been furnished, 4,000 staves were sequestered and attached at the instance of Nevens, valued at $1,-600. Nevens’ suit bonded the sequestered property; so that they held the staves under two forthcoming bonds.
February 19 1907, Friedlaender-Oliven Company filed motions and exceptions to dissolve the sequestration and attachment, on the ground that plaintiff’s allegations were untrue; furthermore the plaintiff had no cause of action. They claimed damages in the sum of $2,500, growing out of, as they alleged, the illegal.sequestration and injunction and other writs. They also moved to compel plaintiff to elect and strike out certain demands in their petition as inconsistent and contradictory. We may as well state now that the petition of plaintiff did not contain contradictory and inconsistent demands.
Friedlaender-Oliven Company answered at length, denying all that plaintiffs alleged, and they alleged that the staves were theirs by purchase in good faith from Henry Fleming (prior to the seizure by plaintiffs), who wds the owner; that the staves were manufactured on lands described in plaintiffs’ petition, and that Fleming, from whom they bought as owner of the land, had had peaceable and uninterrupted possession — he and *1028 his authors — for over 30 years. They interposed all the pleas of prescription, three years, including the prescription of thirty years. Fleming was cited in warranty, on prayer of Friedlaender-Oliven Company.
Warrantor, Fleming, denied that plaintiff had title. He alleged his own title by purchase from Max Fleischer, on the 27th of November, 1906. He alleged that Fleischer bought the timber from E. McBain, and asked for a citation to issue to both Max Fleischer, Ms vendor, and McBain, as warrantors.
Fleischer, warrantor, answered alleging that he had bought the property in good faith from McBain, the record owner, and asked that McBain be cited. Fleischer also pleaded prescription.
On motion of Friedlaender-Oliven Company and Henry Fleming, on February 12, 1910, the two suits of Peter J. Nevens v. Friedlaender-Oliven Company et al. (No. 6,730 D. C.) and Tensas Delta Company v. Fleischer et al. (No. 6,732 D. C.) were consolidated.
[1, 2] While only staves are claimed, the question of title to the land is before us. In order to prove title, the delinquent list for the year 1859 was offered in evidence. A description of nearly all the lands in controversy appears on the list.
The lands of Thomas Kinney, the original owner (entryman), are described and referred to as lands upon which no taxes had been paid that year (1859). This list was sworn to on the 10th day of November, 1860, by the sheriff and tax collector. All parties to these suits agree that the Tensas Delta Land Company claimed in its petition the following described lands: The W. % of W. y2, and E. % of S. W. %, W. y2 of S. E. %, of section 11; the S. y2 of N. W. %, S. W. %, of section 10; the W. y2 of N. W. 14, section 14; the N. E.. 14 of N. % of S. E. 14, section 15 — T. 22 N., R. 10 E. Those lands are described as above on the delinquent list. .
Nevens, one of the parties to the consolidated suits, in Ms action claimed the following : S. E. %, and S. % of N. E. %, section 10; the W. % of W. %, E. % of S. W. %, and W. y2 of N. W. 14, section 14; and N. E. %, section 15 — purchased from Mariah Galpin. If the delinquent list just mentioned amounts to anything, Nevens cannot recover the land he claims. If it has no effect, he is entitled to it.
There is no contention about title to N. y2 of N. E. section 15, as between Nevens and the Tensas Delta Land Company. This last-described land is claimed by the Tensas Company, but not by Nevens. The title to this last-mentioned land will have to be considered in separate paragraphs from those treating of the land first above described.
Defendants’ and appellants’ counsel argued in opposition to the claim of the Delta Land Company from A. Nordgren, and that it had no valid claim to this last-mentioned tract.
As will be here stated, it is true, as contended by defendants and appellants, that in January, 1907, August Nordgren sold the N. E. % of S. E. %, section 15, T. 22, R. 10 E., in district of land north of Red river, containing 40 acres, more or less, to Friedlaender-Oliven Company. It is upon this sale that they earnestly rest their hopes of success in this suit.
The defendants urge that on May 2, 1870, the auditor directed the tax collector to sell the W. % of N. W. 3,4, and the W. % of S. E. i/4, and E. % of S. W. 14, of section 11; S. 1/2 of N. E. %, N. E. 14, and S. E. 14, of section 10; N. E. % of section 15; and N. 14 of N. W. % of section l&wkey;T. 22, R. 10 E., containing 800 acres, reported forfeited to the state of Louisiana for the year 1859, as per delinquent list of the sheriff.
This property was sold at tax sale under the direction of the auditor to Duncan Glenn. The deed of sale was recorded at the *1030 time, and the property passed out of the ■state.
Duncan Glenn died about 1881. His mother, Mrs. Louden, and John L. Cheatham, were his heirs. Glenn failed to pay his taxes thereafter, and the property, in consequence, reverted to the state at tax sale. Going back a few years, prior to the tax sale before referred to, Mariah Galpin, heir of Thomas Kinney, executed a deed of conveyance, October 11, 1881, of all the lands left by Thomas Kinney to P. J. Nevens. This was recorded in West Carroll parish, November, 1881.
Defendants alleged that the deed contained no description, and in consequence could be of no effect. This is true, but the deficiency was supplied by another deed entered into between this vendee and his vendors of the land in question.
With reference to the adjudication of the Glenn property to the state — “Estate of S. Duncan Glenn to the state of Louisiana”— it is recited in this act of adjudication that the property, except 40 aeres, was adjudicated to the state by Bradley, sheriff and tax collector, for nonpayment of the taxes for the years 1880, 1881, and 1882. The instrument of adjudication bears date June 1, 1883. It was only recorded in the recorder’s office, December 21, 1888. It does not appear that an adverse right was acquired during the four years that the deed remained not recorded. Defendants’ contention is that Glenn, having departed this life in 1881, the assessment of the property against his estate in 1882 gives rise to the suspicion that' there was something irregular about the assessment ; and furthermore as Bradley was a defaulter, as the evidence shows, and anxious to protect his name from the charges of defalcation, there must be something wrong about this adjudication to the state.
[8] By another tax collector’s deed, it appears the property of S. Duncan Glenn, the same involved in this suit, was adjudicated to the state by the sheriff for the nonpayment of the taxes of 1883; this is therefore a second deed under which the state held. This deed was filed and recorded in the recorder’s office in July, 1884. The charge of defendant at this point is that this deed gives rise to the presumption that the first deed above mentioned was not a genuine instrument ; that it was framed up to assist a defaulting sheriff, as before mentioned, to settle his account by obtaining credit for a false deed; and that at any rate, as the state continued to have it assessed in the name of the tax debtor, the state had lost all right to the property, if any it ever had — citing in support of this last proposition, Booksh v. Wilbert Sons, 115 La. 354, 39 South. 9. The defendants assume that, because the property after the sale above mentioned was assessed in the name of Nevens, the state lost all rights to it. The assessment in the name of Nevens does not operate to the prejudice of the state and to the benefit of the Glenn heirs. They had no right to a plea of estoppel, although Nevens might have had a right to such a plea.
Defendant argues that this adjudication for nonpayment of the taxes of the estate of Duncan Glenn for the year 1883 is void by reason of the fact that for the year 1883 the property was assessed to plaintiff P. J. Nevens, who paid the taxes for the year 1883, and every succeeding year to the present time. Again, 115 La. Case is invoked to sustain the view that the state hafl acquired no rights.
[9] Leaving the Glenn deed and the adjudication to the state and returning to the Nevens deed it appears that Mariah Galpin, through Pardue, agent, conveyed about 11,000 acres of land in various parishes to Nevens. The objection to this deed is that the power of attorney describes no land, and that it was merely intended to perfect the deed of *1032 October, 1881, mentioned before. This is the land before referred to as described in the deed of sale. It is charged by defendants that the description in the second deed, issued to cure the defects in the first deed, is equally as defective. Let us see: Defendants assail both the last sale and the procuration under which it was made.
The procuration' reads that it authorizes conveyance “of all the real estate in the state.” The intention, as just stated, was to' perfect the deed of October, 1881. It does refer to land of Kinney in certain parishes, naming them — for instance, all of the lands in East Carroll and all the lands in West Carroll, as well as lands in other parishes. Although not giving a full description, we are of opinion that it is complete enough and identifies the property, and that the objection to the procuration, on the ground that the property is not sufficiently described, is not fatal to the deed.
The land passed out of the state again, for on June 4, 18S9, O. B. Steele, auditor, conveyed and delivered to the board of levee commissioners of the Tensas Basin Levee District, among other lands: Tract of the estate of S. D. Glenn, W. Yi of W. Yi, E. % of S. W. Yi, W. Yi of S. E. Yi, section 11; S. Yi of N. E. Yi, and S. E. Yi, section 15 — being 800 acres. These were the estate of Glenn lands, which have been adjudicated to the state by Bradley, sheriff. This transfer recites:
Act No. 96 of 1882 — Taxes 1881, 1882, and 1883.
November 9,” 1898. The Tensas Basin Levee District conveyed the same land to the Tensas Delta Land Company, one of the plaintiffs. Tract of S. D. Glenn, measuring 800 acres.
The act states further:
Act No. 96 of 1882, Taxes 1881, ’2, and ’3.
In August, 1896, J. L. Cheatham sold S. E. Yi and S. Yi of N. E. Yi of section 10; the S. W. Yi and W. Yi of N. W. % and W. Yi of S. E. Yi, section 11; the W. Yi of N. W. Yi of section 14; and N. E. Yi and N. E. Yi and N. Yi of S. E. Vi of section 15 — T. 22 N., R. 10 E., containing 880 acres, to W. A. Ross.
Ross, through Henry, his agent, sold to E. McBain.
Although there are other titles, in order to close this tedious reference to descriptions and titles, as far as possible to determine, we will state that plaintiff Nevens’ contention is that the following deeds, before referred to, are of no effect and null. The forfeiture for taxes of 1859, under the act of 1855 — the copy of the delinquent list, matter before referred to; the subsequent sale by the state to Glenn in 1870; the sale by Cheatham, sole heir of Glenn, to W. A. Ross in August, 1896, and the sale from Ross to McBain in March, 1900. That the sales after the alleged forfeiture are all null because the forfeiture for the taxes of 1859, under Act No. 346 of 1855, was null.
The chain of Nevens’ title begins with sale by Mariah Galpin and husband, made October, 1881, and from the Mariah Galpin sale there is a consecrated list of title to date held by Nevens. We leave the Nevens title and take up the title of the Delta Land Company, the other plaintiff.
The Delta Land Company, the other plaintiff, now claims to be owner of the N. Yi of S. E. Yi, section 15, T. 22 N., R. 10 E., although it claimed considerably more in its petition, tracing its title mainly to- the sale by Steele, auditor, to commissioners of the Tensas Levee District.
Taking up the title of defendants, we find that they claim title principally under, first, the forfeiture to the state for nonpayment of taxes of 1859; and, second, the sale by the state to S. Duncan Glenn in May, 1870.
The suit is the result of conflicting claims of the separate interests, before stated. It is a three-handed contest.
Judgment was rendered in favor of plain. *1034 tiff Nevens, decreeing Mm to be the owner of the lands in controversy and of the timber; also condemning the defendants, Friedlaender-Oliven Company and Henry Fleming in solido, to pay Nevens the sum of $915, with legal interest from date of decree; and it condemns Friedlaender-Oliven Company, Henry Fleming, and Max Fleischer in solido to pay $366 to the Delta Land Company.
From this judgment the defendants have appealed. Plaintiffs have answered the appeal, asking for an increase in the judgment from $915 to $4,000, the alleged value of the staves manufactured.
The defendants ask that the judgment be reversed, or, if not reversed, that their warrantors who were cited and are before the court be condemned to pay the judgment.
[10] The alleged forfeiture of lands in the name of Kinney, for the nonpayment of the taxes of 1859, before noted in our statement of the facts, presents an important question, and for that reason it is the first taken up for decision.
The act of 1855, No. 346, under which the alleged forfeiture was made, required the sheriff to deliver to the recorder a list of lands on which the taxes had not been paid; it required him to swear to the list. This was done, and that is the delinquent list before referred to.
According to section 58 of Act No. 346 of 1855, it was made part of the functions of the recorder “to record this list”; also make a copy of it, and forward it to the Auditor of Public Accounts.
According to section 59, the list and verification, when filed in the office of the recorder, to borrow from the hook—
“shall be entered by him on a record for that purpose, and shall vest from the day of filing a title to the lands and lots therein returned in the state of Louisiana, which shall be impeachable by proof of payment of the taxes.”
The land forfeited for taxes, under the terms of the act cited, was redeemable within two years after the date of the collector’s return. After the two years, if the land was not redeemed, it became the duty of the auditor to order the tax collector, after required advertisement, to sell to the Mghest bidder.
The assessment in which this list was based was not found. The document — that is, the delinquent, list — cannot be found in the office of the auditor. The copy of this delinquent list in the clerk’s office is all that there is of the asserted title.
It was returned by the clerk at the time to the recorder. There the matter of delinquent lists ended. There was no deed recorded in the office, or the least notice in the mortgage or conveyance book of a forfeiture. The following are extracts of a letter addressed to E. H. Masters, state tax collecter of the parish of Carroll, by the auditor, which is among the papers in the clerk’s office:
“Section 81 of the Act No. 114 (Acts 1869) provided that the auditor shall annually, on the first Monday in May, cause to be sold by the state tax collector of the parish or district in which the forfeited lands may be situated, for cash, to the highest bidder (after advertisement), which shall not have been redeemed within two years.”
We insert this letter here because it recites the requirement of the law upon the subject.
Despite the fact that the testimony does not show that these formalities have ever been observed, suggested by the auditor in instructions above, it is argued that full effect should be given to the copy of the delinquent list, which was brought to light— identified as a copy of the delinquent list. The disasters of war, the destruction by fire, the removal of papers from the capitol to distant places, and the consequent loss of many papers, cannot of themselves be considered as sufficient to supply an alleged missing document.
We can only say: It is not because a copy *1036 of a delinquent list has been found in the clerk’s office that it is to be inferred that it was filed in the office of the auditor.
[11,12] Moreover, the law was imperative as stated by the auditor in the letter above. A sale of the property should have been made as required by Act No. 114 of 1869, § 76; that was the object. A proper record should have been kept in "the different offices. Nothing was done, with the exception of the copy-before mentioned; all is a blank. Manifestly the land was not sold for taxes. The law relative to land title is imperative. It is not for us to supply missing links and make that legal which is not. The maxim omnia rite acta is invoked. We can only say that it can have no effect in cases such as this. The necessity for inscription as to third persons is imperative. The knowledge which registry affords cannot be changed or altered, except for fraud or other similar imposition. Harrison v. Ottman, 111 La. 739, 35 South. 844; Adams v. Brownell-Drews, 115 La. 179, 38 South. 957; McDuffie v. Walker, 125 La. 152, 51 South. 100.
As relates to the presumption omnia rite acta, invoked, a similar question was decided in St. Paul v. La. Cypress Co., 116 La. 591, 40 South. 906.
It must be borne in mind that it was not proven that a delinquent list had ever been made and forwarded to and filed in the auditor’s office.
Moreover, the list contained other lands than those of Kinney which were assessed; that is, his lands were assessed with other lands as made to appear by this list. Among these lands there were lands not subject to assessment.
[13]See, as to invalidity on the ground that property of a taxpayer is confusedly assessed with property of others, Head v. Howcott, 119 La. 335, 44 South. 117. At this point learned counsel for defendant questions the district court’s decision in allowing the plaintiff to amend his pleadings in order to enable them to prove that other lands were confusedly assessed with the Thomas Kinney lands.
The objection was that new issues were thereby raised after the case had been closed — to quote the objection literally, “after his cause had been tried to the extent of closing the testimony and being laid over for argument.” It does not appear that defendants have been prejudiced by the ruling, for without that additional testimony the result would not have been different, and therefore we must decline to sustain the objection.
[14] Another unexplained feature in matter of the asserted forfeiture is that the land granted to Thomas Kinney — that is, 400 acres of these lands (the patents) — are dated August, I860, but the delinquent list is for the year 1859. According to this, before Kinney became a patentee he was a delinquent. That is not legally permitted in a pre-emption entry.
[15] Another of plaintiff’s objections is that section 59 of Act No. 346 of 1855, under which the forfeiture was made, provides that from the day of filing in the auditor’s office the forfeiture shall be unimpeachable, except by proof of the payment of the tax. This is easily answered.
As there is no evidence that the list was ever filed, title never vested in the state, and the unimpeachable feature of the act, as set forth in the last-cited act, was without application.
[16] Now, as to the prescription pleaded: It is true, as contended by defendant, nearly 50 years passed before suit was brought. Still we do not find that there was prescription; none could be acquired under the absolute informality. In so far as the Constitution of 1898 is referred to, article 233 of that instrument was not intended to apply to forfeitures. The article refers to tax sales, *1038 not to forfeitures for nonpayment of taxes. There is a difference between a sale and a forfeiture. “There shall be no forfeiture of property for nonpayment of taxes.” Moreover, the asserted forfeitures under the act of 1855 is so entirely null that it is not within any curative effect of any constitution.
But defendants claim under the S. Duncan Glenn title, it being a sale for the nonpayment of taxes of 1870. This was the sale above referred to, made by Mrs. Louden, mother of Duncan Glenn, deceased, and Cheatham, his half-brother, in 1896. This property passed from the estate of Duncan Glenn through the tax collector to the state on May 4, 1884, for the taxes of 1880, 1881, and 1882. So that in 1896 Mrs. Louden and her son undertook to sell property which they did not own, as it had been adjudicated to the state. The adjudication to the state, we have already stated, was valid.
This act was recorded in 1888 (December). Although there was delay of four years in recording the tax deeds, no adverse right had been acquired in the meanwhile. The act of adjudication to the state had been deposited in the clerk’s office.
As the estate of Glenn did not have title at the time that Mrs. Louden and Cheatham sold the property, those who held under a deed of sale from them had no better right. Possession is claimed by all the parties in interest. The lands were never in possession of any one. Plaintiff urged that defendants were not in possession, and that in consequence their alleged title was of no avail. The defendant alleges similarly in regard to plaintiff, that it never had possession. In fact there was a set-off as between plaintiffs and defendants in this respect. The lands are wild lands, and not susceptible of the possession which gives rise to a prescriptive title. We are therefore only concerned with the titles, and not with possession. The chain of title under which plaintiff holds is complete and better than that of defendant.
The next issue grows out of the special claim of the Tensas Delta Land Company to 40 acres of the lands in dispute. Again we have to return to different titles and note them. Defendants urge that they are purchasers of these 40 acres from R. H. Dollerhide, original grantee. It is a fact that in February, 1875, Dollerhide appointed Sanders D. Oliven his agent to sell the N. E. % of S. E. % of section 15, T. 22 N., R. 20 E.
Oliven, agent, on the 8th of April, 1875, sold the same property to Calvin M. Counts.
On the 11th of November, 1884, Mrs. Anna Harris, wife of Thomas Harris, tutrix, is mentioned as the vendor of the undivided one-half of the land. Copy of her asserted deed was offered by defendant, to which plaintiff objected on the ground that no authority was shown as having been given to the tutrix to sell the land, and that the deed was under private signature and not authenticated, which objections were sustained, and the testimony excluded, and defendant reserved a bill of exceptions. The deed is not before us at all. It is an important link in the chain of evidence.
A similar objection was raised to the sale of the other half of the property and sustained by the court.
There is no evidence in the record that we have been able to find of authority to Mrs. Harris, tutrix, to sell the property. There is a recital in the deed of sale which is not evidence. It was not a title translative of property. The property did not pass from Mrs. Harris at all, nor from the joint owner with her.
In July, 1891, Stewart Bros. & Co., who must have acquired some kind of right to Mrs. Harris’ land, claimed as creditors of the vendee in foreclosure proceedings against Susie Cherry, tutrix — bought the property which they (Stewart Bros.) subsequently sold to August Nordgren.
In 1907 Nordgren sold to Friedlaender- *1040 Oliven Company. They, in turn, entered into an agreement in 1906 with Henry Fleming to manufacture and deliver staves to them. Nothing is said in the deed about the land in controversy.
The representation of defendants at this point is that Fleming was manufacturing staves and selling them for the prices mentioned to Friedlaender-Oliven Company, and that Max Fleischer, another party to this suit, had nothing whatever to do with the matter, except that at one time he sold to Henry Fleming the timber he had previously acquired from MeBain. Now, Friedlaender-Oliven Company aver in their answer that some of the staves were manufactured from timber on land described in plaintiff’s petition, -in which they bought- from Henry Fleming.
Returning to earlier dates, there are mesne conveyances in which no mention is made of the land now claimed; others are mentioned in which the description is complete.
There are missing links in defendants’ chain of title.
MeBain sold a timber right to this property, in 1906, to Max Fleischer; again the land is described as the N. E. %. In 1907 Fleischer sold the White Oak and its species on the land to Henry Fleming. This was in February of that year. In October following, MeBain sold to Henry Fleming and A. W. Bivens the land itself; again it is described as the N. E. % of section 15.
In 1906 Fleming sold to Max Fleischer an undivided one-half interest in the land. These different acts seem to have furnished defendants with grounds to take the trees.
Now, as relates to the N. E. % of S. E. section 15.
It is true we nowhere find that Duncan Glenn (or his succession), or Nevens, claimed any interest in it. It is claimed, however, by both thp Tensas Delta Land Company and by Friedlaender-Oliven Company. In the adjudication of the estate of S. D. Glenn to the state, it is described as the N. E. % of S. E. % of section 15. The land as thus described, we have already mentioned, passed from the state to the levee board.
The main difficulty in all this is that the description in the different deeds vary.
Neither the estate of Duncan Glenn nor its transferees, nor Nevens, claimed any interest in the N. E. % of g. E. % of section 15. It was, as before stated, entered by Dollerhide, who sold to Calvin M. Counts in 1875. But the defendant failed to prove up a complete chain of title beginning with the Counts title who held under Glenn, afterwards comes the former ownership of Mrs. Harris and others; they (defendants) failed to make proof of a continuous title. They cannot claim the benefit of the Glenn title, because they do not connect, by proof, their chain with that title. The evidence, as before stated, was properly excluded because the deed was not authorized.
In 1883 the land — that is, the N. E. of section 15 — was assessed to P. J. Nevens for taxes, which were paid for by him. Learned counsel for defendant refers us to pages 309, 311, 312, and 324 to 327 of the bulky transcript of 509 large typewritten pages for tax receipt of taxes paid by defendants. We read these pages, and did not find tax receipts showing that the defendants had paid taxes on the property claimed for the years mentioned by her counsel. There are differences of views without end in this case. Even as to the number of acres there is disagreement. The Tensas Levee District claims 80 a.cres; the defendant 40 acres. It is of no importance to this plaintiff whether it is 80 or 40. The defendant would be advantaged if they were to recover the first number, but they claim 40 acres and no more; but the description of the land does not sustain the claim.
We will again mention: In 1891 Stewart *1042 Bros, sold this particular tract. They had no valid title to transfer, for reasons before stated; that is, Mrs. Harris et al. from whom they held transferred it without authority. Some time prior to that time it had been adjudicated to the state and by the state, and subsequently it was sold to plaintiffs’ author.
For the reasons stated, it follows that Nordgren had not acquired a title in 1891.
[17] The question of damages is the next to be considered. It was a technical trespass on part of defendants. Plaintiffs are entitled only to the value of the property taken.
Nine hundred fifteen dollars was allowed by the judge of the district court against Friedlaender-Oliven Company in favor of Peter J. Nevens, value of the timber cut, and costs in suit No. 6,730; the writs of attachment and sequestration sued out by Nev-ens were sustained, and staves sequestered were ordered sold, and the proceeds to be applied to the payment of the $915. The ownership of the N. % of S. E. % was recogniz-, ed as being in the Tensas Land Company, and judgment rendered in favor of the company against Friedlaender-Oliven Company, Henry Fleming, and Max Fleischer in solido for $366, value of the timber cut on said Nordgren land.
(It will be here stated that defendants laid no claim to the last-described lands as indicated above; they claimed the N. E. % of S. E. of section 15, and maintained plaintiff’s sequestration and writ of injunction.)
Cummins, in the employ of the Delta Land Company since 1898, testified that he is the company’s timber supervisor; he found workmen on the land; they were working for Fleischer; they had about 7,000 staves. Neill, a timber cruiser, also testified, and others.
[4] Ten thousand staves were cut in the Mc-Bain tract, now owned by one of the plaintiffs. There were 366 cut down. There were trees cut down also on the tract known as “Noldran.” We will leave the amount as. it is. There was other evidence which we have considered. Defendants have not pointed out in which respect it is excessive.
[3, 5, 6] The objection to the conservatory writs have to be considered.
They are, as stated in the findings of facts,, that the plaintiff did not swear to the absence of the district judge to obtain the injunction, and the sequestration bond was-made payable to defendants instead of the clerk; that was in the first suit filed — that is, the Delta Land Company’s suit. It is as-alleged by defendants the oath did not show the absence of the district judge, and the bond for injunction was not made payable to the clerk. These informalities are fatal, and the writs are dissolved at costs of plaintiff in the first suit. Defendants have claimed damages. This claim is relegated to another suit and rights reserved to recover them if due. Defendants ask for judgment against warrantors. We are of the opinion that the issues had better be decided in another suit if defendants have any right at all.
For reasons stated, the judgment of the district court is avoided, annulled, and reversed, maintaining the first writ of sequestration and the writ of injunction, and these-writs are dissolved at plaintiff’s costs (to wit, the Tensas Land Company) in the first suit, and the right to damages, if any there be, is reserved; the rights against warrantors, if any there are, is also reserved; in all other respects the judgment is affirmed, at defendants’ and appellants’ costs on appeal.
(June 28, 1912.)
The Delta Land Company obtained orders of sequestration, provisional seizure, attachment, and injunction. R. 3. It furnished an *1044 injunction bond. R. 6. Also a sequestration bond.
Friedlaender-Oliven Company moved the court to have the sequestration and provisional seizure dissolved on bond. The property was released on bond furnished by this firm.
Friedlaender-Oliven Company filed a motion to dissolve the writs of injunction, sequestration, and provisional seizure sued •out by the Delta Company. T. 18.
In the answer filed it reserved its right to have these writs dissolved.
Henry Fleming also moved to dissolve the writs of injunction, sequestration, and provisional seizure. In the different motions, plaintiffs, in motions, asked for the allowance of damages.
Nevens in his petition prayed for sequestration and for attachment. R. 36. Order issued granting prayers. R. 38. Nevens furnished attachment bond. R. 39. He also' furnished a bond for sequestration. R. 41.
Friedlaender-Oliven Company moved to set aside the sequestration on its bond. R. 45.
Friedlaender-Oliven Company moved to •dissolve the writ of attachment and sequestration and asked for damages. R. 55.
In the suit of Nevens against defendant the writs of attachment and sequestration were ■sustained.
In the suit of plaintiff, the Tensas Delta Land Company, the writs of sequestration .and injunction were dissolved, with costs of issuing said writs, but without damages. Nothing was said in the judgment of the provisional seizure.
The motions to dissolve were referred to the merits.
The provisional seizure should have been dissolved, for, among other reasons, the clerk had no authority to issue that writ, as the absence of the district judge was not •shown by affidavit ex proprio motu.
The decree heretofore handed down is amended by striking the words “maintaining the first writ of sequestration and the writ of injunction,” and these writs are dissolved at plaintiff’s costs (to wit, the Tensas Land Company) in the first suit. As these writs have been dissolved, and in lieu of the words erased and canceled, as just stated, the words “provisional seizure” are inserted, dissolving same at plaintiff’s costs.
This amendment made without prejudice to applications for rehearing.
(Oct. 21, 1912.)
PER CURIAM. Application for rehearing granted as to the title to N. E. % of S. E. % of section 15. In all other respects the judgment is final.