## No. 1978.
### Second Circuit Appeal.

## MRS. M. J. NEAL v. WYATT LUMBER COMPANY, LIMITED.

(April 11, 1925, Opinion and Decree)
(June 27, 1925, Rehearing Refused)

---

*(Syllabus by the Editor.)*

1. Louisiana Digest—Railroads—Par. 59.
Act. No. 167 of 1910 requires that railroads shall so construct and maintain their crossings, including approaches, over public roads so as not to hinder, impede or obstruct safe and convenient use of the highways. Hence, corporation failing to do so is responsible in damages to travelers injured by reason of the bad crossings.
   (Civil Code, Art. 2315. Editor's note.)
2. Louisiana Digest — Appeal—Par. 552, 554.
The general rule of law is that a judgment does not become final until application for rehearing is finally passed on by the court to which the case has been appealed.
3. Louisiana Digest—Appeal—Par. 706.
The error complained of by plaintiff is a patent error apparent on face of the papers and is such an error as the court can and should correct without granting a rehearing.

### ON A REHEARING

4. Louisiana Digest—Appeal—Par. 706.
An error making plaintiff, to whom judgment was given, pay cost is patent on the face of the record and should be corrected without a rehearing.

Appeal from the Twelfth Judicial District Court of Louisiana, Parish of Sabine. Hon. J. H. Boone, Judge.

This is a suit for damages for personal injuries sustained from being thrown from a wagon while it was crossing a railroad track of the defendant.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

R. A. Fraser, of Many, attorney for plaintiff, appellant.

S. D. Ponder, of Many, attorney for defendant, appellee.

### STATEMENT OF THE CASE.

This is a suit by Mrs. M. J. Neal against Wyatt Lumber Company, Limited, asking for $10,000.00 damages for personal injuries sustained by her through being thrown from a wagon on which she was riding as it was crossing the railroad or train track of defendant, Wyatt Lumber Company, Limited, where the said track crosses the Negreet-Sabine Town public road.

The defendant denies liability on the ground that if any injury was suffered by plaintiff it was caused by the roughness of the crossing caused by heavy rains, overflow and washout; and further pleads, in the alternative, that plaintiff was guilty of contributory negligence, recklessness and carelessness, in that she was riding sitting in a straight chair just behind the spring-seat in a two-horse wagon.

On these issues there was a trial in the lower court and judgment was rendered in favor of the defendant. Plaintiff has appealed. Judgment reversed and rendered.

### OPINION.

The first question presented is whether or not the condition of the crossing was due to recent heavy rains, overflow or washout.

In the evidence it is not stated by any witness that there had recently been any

heavy rain, and all of the witnesses agree that the crossing was entirely above overflow. There is no evidence of any washout at this point.

The evidence as a whole shows that the crossing had not been repaired in over two years.

Hoyt Neal testified, page 46:

"Q. Have you known it to be in any different condition from what it was on the day that the accident happened and the day that we took the pictures?
"A. Well, when they first put the track across there they kind of half way fixed it,—not much,—but it didn't stay that way but a short time and it got tore up going across with log wagons and one thing and another and they never repaired it any more."

From all the evidence, we have concluded that the defence of the defendant on this point has failed.

The next question to be considered is whether plaintiff, by riding sitting in a straight chair in a wagon just behind the spring seat, to which she was holding at the time of the accident, was guilty of negligence and contributed, by her own carelessness, to the accident.

The only witness introduced on this point was Mr. J. D. Stroud, who testified, page 64:

"Q. You have seen that all your life?
"A. Yes, sir.
"Q. And you have seen many times women sitting in ordinary straight rawhide or cane bottom chairs and riding. You have seen that all your life?
"A. Seen it often.
"Q. It is a common sight in the country?
"A. Yes, sir."

From this testimony of defendant's witness we conclude that plaintiff cannot be held to have contributed to the accident by carelessness, or to have been guilty of contributory negligence by riding sitting in a straight chair in the back of a wagon

conveniently located so that she might hold on to the back of the spring-seat.

This brings us to the question as to the condition of the crossing.

Hoyt Neal, page 45, testified:

"Q. Now, I will ask you whether or not there were any planks or anything between the railings?
"A. No, sir.
"Q. There were not at that time?
"A. No, sir."

And, on pages 47 and 48:

"Q. I will ask you whether or not the condition of that crossing was such that it was convenient and safe to drive a wagon across?
"A. No, it was not safe, anybody who seen it would know that.
"Q. I will ask you whether or not it was on one of the public road crossings leading from your residence to the place where you wanted to go that day?
"A. Yes, sir, one way."

E. R. Stroud, testified (page 57):

"Q. I will ask you whether or not that crossing was in a good, well kept condition, or whether or not it was very rough and hard to get across with a wagon, team, vehicle, at the time that we looked at it?
"A. Well, it was in pretty hard shape."

And, on page 62:

"Q. How did you go—go down on this road?
"A. Yes, sir.
"Q. Mr. Ponder has asked some questions about the road that detoured around through the camp. Why didn't you use that road?
"A. Well, I did coming back.
"Q. Why did you use it coming back?
"A. I was afraid I might fall off of some of them railings."

Dan E. Miller testified, page 66:

"Q. I will ask you whether or not your wagon jolted and shook the people in the wagon about at the time that you crossed that tram road?
"A. Yes, sir.
"Q. Was that caused by reason of the roughness of the track?
"A. Yes, sir."

And on page 67 the same witness testified:

"Q. I will ask you whether or not there was sufficient hill there to make you put on your brake or whether you put it on because of the roughness of the crossing?

"A. Of course it was rough and I didn't want the wagon to run down and run over the team or nothing like that."

T. S. Mathews, wod foreman for the defendant company called on behalf of the defendant as a witness testified (page 71):

"Q. It was very rough, was it not?

"A. Yes, sir."

From all the evidence of both plaintiff and defendant we have reached the conclusion that the crossing over defendant's railway or tram track at the public road crossing was in a dangerous and unsafe condition.

Mrs. M. J. Neal, the plaintiff, testified:

(Page 2):

"Q. Did you have an injury or severe fall in the latter part of the spring of 1922?

"A. Yes, sir."

\* \* \* \*

"Q. Was that on the public road in Sabine parish?

"A. Yes, sir, public road."

(Page 3):

"Q. Where did you get the fall,—at the railroad track or somewhere else on the road?

"A. At the railroad track.

"Q. What caused you to fall out of the wagon."

"A. Well, it was the wagon jumping off that track—the chair turned and I fell."

(Page 4):

"Q. Did you fall out at the side of the wagon?

"A. Right side of the wagon."

\* \* \* \*

"Q. Were the horses running or cutting up in any way?

"A. No, sir; not a thing in the world. He throwed on the brake as he started down and that is the last thing I know."

(Page 15):

"Q. You tell this court that you fell on the crossing?

"A. As the wagon jumped off of the crosstie I fell off.

"Q. As it jumped off the crosstie?

"A. Yes, sir."

(Page 81):

"Q. Mrs. Neal, I want to ask you what threw you out of the wagon on the day that you had the accident?

"A. The jolt—the jumping off of that place.

"Q. I will ask you whether or not reaching for the jug of water tilted or threw your chair over to that you fell out?

"A. No, sir, it was the jolt that throwed me out.

"Q. What caused the jolt, Mrs. Neal?

"A. It was jumping off the bluff—whatever it was."

Act No. 167 of 1910 requires that railroads shall so contruct and maintain thier crossings, including approaches, over public roads so as not to hinder, impede or obstruct safe and convenient use of the highways. Hence, corporation failing to do so are responsible in damages to travellers injured by reason of the bad crossings.

Darby vs. New Orleans, T. & M. R. Co., 139 La. 213, 71 South. 490.

Jones vs. Tremont Lumber Co., 139 La. 616, 71 South. 862.

Under the law and the evidence above quoted we are of the opinion that plaintiff is entitled to judgment for the injury she received by being thrown from the wagon as she was crossing the railroad track on the public highway.

This brings us to the question of damages.

The evidence shows that plaintiff paid, for doctors' bills, $22.50 and for medicine, $25.00. Her arm was broken in the elbow and she received a permanent injury to said arm and hand. She can move her fingers slightly, but the movement in same is considerably impaired; and she cannot

raise her arm to her head without using the left arm to lift the arm injured.

After going carefully over all of the evidence as to the damage caused plaintiff, we are convinced that for the pain and suffering endured by her and for the partial loss of the use of her arm she is entitled to $1,000.00 damages.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be reversed, and it is now ordered, adjudged and decreed that plaintiff, Mrs. M. J. Neal, do recover of defendant, Wyatt Lumber Company, Limited, judgment for the full sum of one thousand and forty-seven and 50-100 dollars with five per cent per annum interest thereon from final judgment herein; plaintiff to pay the costs in both courts.

---

## ON APPLICATION OF PLAINTIFF, APPELLANT, FOR A REHEARING

REYNOLDS, J. In this case both plaintiff, appellant, and defendant, appellee, filed motions for rehearing. The defendant's motion has heretofore been overruled. Plaintiff's motion has not heretofore been passed on.

Plaintiff, in her motion, calls the court's attention to the fact that the decree rendered by this court gave the plaintiff judgment for $1,000.00 and cast the plaintiff for the costs. This was error, for under the law the costs should follow the judgment, and it was error, therefore, to place the costs on the plaintiff, in whose favor judgment was rendered. The general rule of law is that a judgment does not become final until application for rehearing is finally passed on by the court to which the case has been appealed.

Harrison vs. Ottman, 111 La. 730, 35 South. 844.

The error complained of by plaintiff is a patent error apparent on the face of the papers and is such an error as the court can and should correct without granting a rehearing.

American National Bank vs. Reclamation Oil Producing Association, 156 La. 660, 101 South. 10; and authorities there cited.

It is therefore ordered, adjudged and decreed that the judgment heretofore rendered in this case be recast so as to read as follows:

It is therefore ordered, adjudged and decreed that the judgment of the lower court be reversed, and it is now ordered, adjudged and decreed that plaintiff, Mrs. M. J. Neal, do recover from defendant, Wyatt Lumber Company, Limited, judgment for the full sum of one thousand and forty-seven and 50-100 dollars with five per cent per annum interest thereon from final judgment herein; all costs to be paid by the defendant, Wyatt Lumber Company, Limited.

And, having corrected the error complained of, rehearing is refused.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. In our original opinion we held that defendant was guilty of negligence in failing to comply with its statutory duty to keep the crossing over its railroad track in safe condition; and that the plaintiff was not guilty of contributory negligence in riding on a chair in the wagon, which was a common custom in the country.

In his application for rehearing, learned counsel of defendant makes no particular complaint against these holdings but urges very earnestly that the plaintiff's act in reaching for the water jug was negligence and contributed to the accident, wherefore, he claims, she is without right of recovery.

Of course the law is well settled that an injured party cannot recover, even

though his adversary was guilty of negligence, if his own negligence contributed as a proximate cause to the accident causing the injury.

But we do not think that the plaintiff's act in reaching for the jug was negligence on her part. She testifies positively, and it is not disputed, that while reaching for the jug with her left hand she held on to the spring seat with her right hand. She admits she leaned over, but says, (page 24), that she did not get up; (page 30), that her reaching did not cause her to fall; (page 30), that the jug was a little to her left and that she fell on the right side of the wagon; (page 101), that "the jolt—the jumping off that place" (meaning the railroad track) was what caused her fall.

She was asked, (page 101):

"I will ask you whether, or not reaching for the jug of water tilted or threw your chair over so that you fell out?"

And she answered:

"No sir, it was the jolt that throwed me out."

Counsel lays great stress on the testimony of plaintiff's son-in-law, Dan E. Miller, as to an admission made by plaintiff as follows:

"Q. Didn't you hear her say that after * * * Didn't Mrs. Neal tell you that * * (counsel reading from document) 'In crossing railroad track that jug of water', which was in the wagon floor near the chair which she was sitting in, fell over and in reaching for jug of water to set it up again her chair tilted and she got over-balanced and fell out?'
"A. She did."

In the first place, testimony as to admissions of a party is notoriously weak. Besides, the undisputed testimony is that though in reaching for the jug she leaned over a little to her left, yet when she fell out it was to the right of the wagon.

This circumstance alone it seems to us, is sufficient to show that her leaning over was not what caused her to fall out, even if she did tilt the chair in leaning; the undisputed testimony also being to the effect that while leaning over and reaching for the jug with her left hand she was holding to the spring seat with her right. We do not think her act in reaching for the jug was one of negligence on her part. This holding with one hand was sufficient, in our opinion, reasonably to secure her safety in the wagon, and would, we think, have done so, but for the sudden jolt caused by the condition of the track as the wagon dropped off of it.

Rehearing refused.