## MANBAR COAL CO. v. DAVIS, Agent.

(Circuit Court of Appeals, Fourth Circuit.    March 10, 1924.)

No. 2183.

**1. Carriers ☞40—During unavoidable shortage of coal cars, duty only to make fair distribution of available cars.**

When conditions in the coal trade are normal, the number of cars to which a miner and shipper is entitled is measured by its reasonable requests, based on its actual needs; but when, because of conditions which it could not foresee, or, if foreseeable, guard against, a carrier has not and cannot procure sufficient cars to furnish all operators on its line with all the cars desired and demanded by them, it discharges its whole duty if it fairly and equitably distributes its available cars among them.

**2. Railroads ☞5½, New, vol. 6A Key-No. Series—Federal Agent suable only as standing in place of particular carrier.**

A suit cannot be maintained against the federal Agent appointed under Transportation Act 1920, § 206 (a), being Comp. St. Ann. Supp. 1923, § 10071¼cc, for anything done or left undone by the Director General as operator of all the railroads in the United States as a single system; but each railroad system is personified, and unless some particular carrier could, previous to federal control, have been held answerable for the alleged wrong charged against the Director General, if done by it, he is not liable.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action at law by the Manbar Coal Company against James C. Davis, as Agent, etc.  From the judgment, both parties bring error.  Affirmed.

W. C. W. Renshaw, of Huntington, W. Va., and R. S. Spilman, of Charleston, W. Va. (Price, Smith, Spilman & Clay, of Charleston, W. Va., and Vinson, Thompson, Meek & Renshaw, of Huntington, W. Va., on the brief), for plaintiff in error.

Douglas W. Brown, of Huntington, W. Va. (Herbert Fitzpatrick and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for defendant in error.

Before WOODS and ROSE, Circuit Judges, and WEBB, District Judge.

ROSE, Circuit Judge.  The plaintiff in error occupied the same position below and will be so designated here.  It owns and operates certain coal mines in Logan county, W. Va., on the line of the Chesapeake & Ohio Railway Company.  The declaration filed in this case contained three counts.  The first and second of these are for present purposes substantially alike.  In each of them it seeks to recover from the defendant for the damage it said it suffered in consequence of the government's failing and refusing during the period of federal control to furnish it with an adequate number of cars in which to transport its coal and coke.  The third charged that during the period of federal control there was an unlawful discrimination in the furnishing

of cars, to its damage, in that coal mines in Alabama, Arkansas, Missouri, Illinois, Indiana, Ohio, Pennsylvania, and other states received a number of cars sufficient for 85 per cent. of the coal they were capable of mining and producing, while the plaintiff received only 45 per cent. Defendant first moved to quash the return to the summons; second, filed a plea to the jurisdiction; third, demurred to the declaration; fourth by stipulation, its plea to the jurisdiction, if not sustained as such, was to stand as a plea in bar. To it the plaintiff demurred. The case was submitted to the court without a jury, the parties agreeing that the allegations of the plea should be considered proved. It alleged the taking possession by the President of the railroads of the country, the appointment of the successive Directors General, the operation and use of the roads by them under a uniform and co-ordinated national control, in which coal cars throughout the United States were pooled, allotted, assigned, distributed, located, and relocated as in the judgment of the Director General, for the time being, the exigencies of the war situation required. It set forth the appointment by the President on August 23, 1917, of a United States Fuel Administrator, the establishment of mine prices for coal, the issue of orders and regulations governing its distribution, the establishment of preference lists and special prices in various sections of the country, and the creation of what was known as the "zone system" to govern the distribution of bituminous coal. It set up that, under the orders of the President, the Director General was required, in co-operation with the Fuel Administrator, so to distribute his coal cars as to carry out the orders of the latter, without regard to the general principles usually governing a common carrier in the distribution of its cars. It asserted that during the period in question, the duty of the Director General in the assignment and distribution of coal cars was not as prescribed by the general law applicable to common carriers in general, but as required by the exigencies of the war and by acts of Congress, proclamations of the President, executive orders, bulletins, circulars, and orders issued from time to time under the war power of Congress and the President, and that the Director General distributed coal cars in accordance therewith.

The plea said that the plaintiff's complaint was as to a matter wholly administrative in its nature, and during the period in question was cognizable, if at all, solely by the Interstate Commerce Commission. In its argument before us, plaintiff admitted that, as among the mines along the line of the Chesapeake & Ohio Railway, it had not been discriminated against. The learned court below overruled the motion to quash the return of service and upheld its jurisdiction in the action, but held that the plaintiff was not entitled to recover in it. The case is here upon cross-writs of error. The defendant's brief does not say anything as to the sufficiency of the service of process, and we do not recall that it was mentioned in the oral argument of its counsel. At all events, as to it, we see no reason to differ with the conclusion of the court below. We shall limit what we have to say to the questions upon which the ultimate rights of the parties depend, leaving unnoticed merely technical objections to the form and sufficiency of the plead-

ings, because of defects which, if they exist, are curable by amendment.

[1] When the conditions in the coal trade are normal, the number of cars to which a miner and shipper of coal is entitled is to be measured by its reasonable requests, based upon its actual needs. Pa. R. Co. v. Sonman Coal Co., 242 U. S. 120, 37 Sup. Ct. 46, 61 L. Ed. 188; Pa. R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Illinois Central Ry. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 35 Sup. Ct. 760, 59 L. Ed. 1306. It is equally clear that if, because of conditions which it could not foresee, or, if foreseeable, guard against, it had not and could not procure sufficient cars to furnish all the operators on its line with all the cars desired and demanded by them, it discharged its whole duty if it fairly and equitably distributed its available cars among them. Illinois Central Ry. Co. v. Mulberry Hill Coal Co., supra; Pa. R. Co. v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867. It follows that the plaintiff was not entitled to recover upon either of the first two counts of its declaration, for the allegations of the plea, which the parties agreed should be taken as proved, showed that the conditions were in the highest degree abnormal, and it is admitted that among the mines along the line of the Chesapeake & Ohio Railroad the distribution of cars was fair and equitable.

Should the plaintiff take anything under its third count, the theory of which is that the Director General of Railroads was bound to treat all the railroads and all the cars under his control as if they were a single system, and, if he had not coal cars enough to supply every mine in the United States with all for which it had legitimate need, he was bound to work out and apply a system of distribution by which each mine should receive substantially as large a percentage of the number for which it had reasonably asked as was furnished to any other in all the wide stretch from Quoddy Head to San Diego and from Key West to Puget Sound. We shall put on one side the perhaps pertinent inquiry whether the law would require the rule of equal and ratable distribution to be rigidly applied over so great an area, and in which conditions, climates, and seasonable needs differed so widely, even if all the railroads were consolidated under the control of a single privately owned company. It is at least conceivable that under such conditions many questions would arise which in the public interest and with justice to all could only be dealt with by laying down by the Interstate Commerce Commission of one or many administrative rules governing the distribution of cars.

[2] We do not go into the inquiry, interesting as its possibilities are, because we are persuaded that Congress has given no one the right to sue the Director General or his successor, the Agent designated by the President, for anything the former did or left undone as the operator of *all* the railroads in the United States. On the contrary, it has been careful to limit his liability to such acts as he did or did not do as the director of a particular carrier. If the carrier had, previous to federal control, done or left undone what is charged against him, and it could then have been sued for it he is liable, and not otherwise. Section 206 (a) of the Transportation Act of Febru-

ary 28, 1920 (Comp. St. Ann. Supp. 1923, § 10071¼cc). As the Supreme Court has said, each railroad system has been personified as in admiralty ships long have been. Missouri Pacific Ry. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087. Unless some particular carrier as the active responsible party could, previous to federal control, have been held answerable for the wrong charged against the Director General, if done by it, he is not liable. In accordance with this principle he may in the same suit, if justice requires it, be dealt with as if he were two persons, and not one. Granquist v. Duluth, M. & N. Ry. Co. (Minn.) 193 N. W. 126; St. Louis, B. & M. Ry. Co. v. McLean (Tex. Com. App.) 253 S. W. 248. Plaintiff sued the defendant in virtue of the Director General's control of the Chesapeake & Ohio Railway Company and had process served upon him by service upon an agent of that railway. He was brought into court to answer for a wrong done by the Director General for which the Chesapeake & Ohio Railway, but for federal control, would have been suable and for that wrong alone. Granquist v. Duluth, M. & N. Ry. Co., supra.

Plaintiff has not seriously claimed that it could have maintained this suit prior to the enactment of the Transportation Act of February 28, 1920, but it contends that the liability of the government to suit through the agent to be designated by the President has been greatly broadened by that enactment, and especially by sections 202 and 206 thereof (Comp. St. Ann. Supp. 1923, §§ 10071¼b, 10071¼cc). The former section, in our view, has primary, if not exclusive, reference to the settlement of disputes and controversies between the government and the individual carriers, and the report of the conference committee immediately preceding its enactment so indicates. Report of House of Representatives, 2d section, 66th Congress, volume 1, No. 650, p. 53. At all events it is certain that it grants no authority to maintain a suit against the United States. That permission, so far as it is accorded at all, is given by section 206, the purpose of which was to make sure that the return of the roads to private control should not leave remediless any one then entitled to sue the Director General. It has many provisions which show that the sole liability for the enforcement of which it provided was that of the Director General as the controller of a particular carrier. The able and industrious counsel who here argued the case for the plaintiff admitted that they knew of nothing in the legislative history, either of the act as a whole or of the particular sections of it upon which they rely, to suggest that Congress had in mind so great an extension of federal liability as that for which they now contend. There is nothing in the words used to compel us to hold that such extension was made, whether Congress intended it or not. In fact, the question is no longer open, for the Supreme Court has expressly decided that "the Transportation Act of 1920 (Act Feb. 28, 1920, c. 91, § 206 [a] and [d], 41 Stat. 456, 461, 462) in no way invalidates a defense good when it was passed." Davis v. Wechsler, 263 U. S. 22, 44 Sup. Ct. 13, 68 L. Ed. ——.

We see no occasion to determine whether the learned court below should have taken judicial notice of the state of the country during

the period in question and the condition of railroad transportation then existing, so far as they affected the supply and distribution of coal cars, and in consequence should have sustained, as the defendant contends, its demurrer to the declaration, or whether it followed a wiser course in compelling the defendant to allege such matters in its plea and prove them, as by the stipulation of the parties it did.

In either event, it was right in its ultimate conclusion that plaintiff was not entitled to recover, and its judgment to that effect must be affirmed.