DAVIS, DIRECTOR GENERAL OF RAILROADS, AS AGENT UNDER SECTION 206 OF THE TRANSPORTATION ACT OF 1920, *v.* DONOVAN, AS OWNER OF THE DECK SCOW "MARY ETHEL," ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 757. Argued April 10, 1924.—Decided May 26, 1924.

1. Under § 10 of the Federal Control Act and General Order 50–A, issued January 11, 1919, by the Director General of Railroads, the Director General was not made suable generally, as the operator of all railroads, but only with special reference to the particular transportation system or "carrier" out of whose operations the liability in question arose. Cf. *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554. P. 263.
2. Therefore, an action against him for alleged negligence in the operations of one carrier cannot be maintained by proof of negligence in the operations of another carrier, both under his control. *Id.*

294 Fed. 525, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals affirming a decree of the District Court for the present respondent, in a libel brought by him against the Director General of Railroads to recover damages for injury to a vessel resulting from a collision.

*Mr. Evan Shelby,* with whom *Mr. John E. Walker* was on the brief, for petitioner.

The federal courts, outside of the Second Circuit, and the appellate courts of nine States, have rendered decisions which are opposed to the decision of the court below. *Manbar Coal Co.* v. *Davis,* 297 Fed. 24; *Whalen Paper Mills* v. *Davis,* (Dist. of Col.) 288 Fed. 438; *Granquist* v. *Duluth, etc. Ry. Co.,* 155 Minn. 217; *Payne* v. *Lind,* 106 Oh. St. 14; *Bostwick* v. *Director General,* 220 Mich.

21; *Cardwell* v. *Payne,* 226 Ill. App. 227; *Payne* v. *Lyon,* 154 Ga. 501; *Director General* v. *Monroe,* 28 Ga. App. 6; *Harmon* v. *Hines,* 139 S. Car. 179; *Farr* v. *St. Louis S. W. Ry. Co.,* 154 Ark. 585; *St. Louis, etc. Ry. Co.* v. *McLean,* (Tex.) 253 S. W. 248; *Payne* v. *Coleman,* (Tex.) 232 S. W. 537; *Davis* v. *Dantzler Lumber Co.,* 126 Miss. 812. *Contra, Davis* v. *Alexander,* (Okla.) 220 Pac. 358.

The officials of the Railroad Administration throughout the period of federal control and the succeeding period of liquidation regarded each transportation system under federal control as distinct and separate.

*Mr. George V. A. McCloskey* for respondents.

The happening of the accident raises a presumption of the petitioner's fault and, as the action is *in personam,* it is for him to show a cause not involving his fault. *The Louisiana,* 3 Wall. 164. The petitioner may not relieve himself from that burden by proving that he struck the blow with his left hand, not with his right; and in the case at bar, his defense hardly amounts to so much.

The petitioner speaks of the operation of the New York Central tug as though the fault were in that; but it was not strictly speaking in operating their own tug, it was in handling the New Haven carfloat, that the New York Central men were negligent.

It was through the instrumentality of the New Haven carfloat that the libelant's scow was damaged, whether the Director General was controlling her movements through servants drawn from that railroad system or from another, and since the suit is *in personam* the Director General is equally liable no matter what set of servants cast the property of the New York, New Haven & Hartford R. R. Co. into collision with the libelant's scow.

More than one service of process on the Director General is not contemplated.

Under petitioner's construction of General Orders 50 and 50–A, duplicate service would have been the rule where more than one railway system was involved and the same construction would upon like reasoning be extended to § 206, Transportation Act, 1920. Neither the General Orders nor the Transportation Act contain a syllable relating to or even suggestive of duplicate service of process. All alike contemplate a single party defendant, though, before federal control, the joinder of two or more railroad companies was frequent.

The plain purpose of General Orders Nos. 50 and 50–A, in providing for service upon operating officials operating for the Director General the railroad in respect of which the cause of action arose, was obviously both to serve the convenience of litigants, who thus could find some one near at hand to serve with process, and to facilitate the preparation of the Director General's defense, by giving notice of the suit to those who were in the best position to have notice of the facts. The provision was certainly not intended to sift jurisdictional points so fine that suit should fail where process was served through one but not through another railroad system in some manner involved.

Unified control intends a single agency in control. Federal Control Act, March 21, 1918, c. 25, § 10, 40 Stat. 451.

General Order No. 50 provided that suit should be brought against the Director General and not otherwise. The act contemplates suit against one party only. There is no provision for service upon him in more than one capacity or for adjustment or adjudgment of responsibility as between the government administration of one railway system and the government administration of another. Final judgments are to be rendered against an agent designated by the President, as such generally, and not in a capacity special to each railroad system, and are

to be paid out of a revolving fund created by § 210. This revolving fund is appropriated for the payment of judgments generally, without distinction in respect of the specific railroad under federal control.

Federal control of the railroads was an exercise of the war power (*Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135,) and the United States thereby became, in the place and stead of the owning companies, the operator of their respective systems of transportation. *Dahn* v. *Davis,* 258 U. S. 421. The United States Railroad Administration has been authoritatively characterized as " one control, one administration, one power, for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided, the private ownership theretofore existing." *Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135; *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554. In the *Ault Case,* this Court held that statutory penalties for defaults in operation might not be imposed upon the owning company, since its control of the railroad was suspended, nor upon the Director General, since his possession was that of the United States. Reference to the transportation systems as " entities " was made, not in connection with any suggestion of multiple legal personality in the single representative of the Government's unified administration of these systems, but in explaining the statutory language " carriers while under federal control " (Federal Control Act, § 10,) as intending, not the corporations, but their transportation systems. Any suit against the Director General is a suit against the United States. *Dahn* v. *Davis,* 258 U. S. 421. Since the suit is essentially one against the United States, and since the United States took no divided, but a complete, possession and control of the railways for all purposes (*Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135,), it should follow that its agent for that purpose, standing suit as

such, had a capacity as unified as the control he exercised. There is no substance to the theory that between the private litigant and the remedy against the Government there has been interposed a shifting phantasm, a multiple personality under one name, a series of legal entities representative of the Government, not of the owning companies, yet as numerous as the transportation systems. *Globe & Rutgers Fire Ins. Co.* v. *Hines,* 273 Fed. 774; *Red Hook Dredging Corporation* v. *Director General,* (unreported opinion, U. S. D. C., Ward, J., January 20, 1922.)

Remedial provisions, broadly expressed, are not to be narrowly construed.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

June 13, 1919, respondent Donovan, owner of the "Mary Ethel," filed a libel in the United States District Court, Southern District of New York, against the "Director General of Railroads of the United States (New York, New Haven and Hartford Railroad Company)"—for whom James C. Davis, Agent, etc., has been substituted— and another, wherein he asked to recover for damage sustained by his vessel when in collision with the New York, New Haven and Hartford Railroad Company's car float No. 46. He alleged that the collision resulted solely from negligence of the float and those in charge of her; that the President took possession of all systems of transportation, December 28, 1917, through the Director General; and " that at all the times herein mentioned the car float No. 46 was managed, operated and owned by the said New York, New Haven and Hartford Railroad Company under the control or operation of the said Director General of Railroads."

The "Director General of Railroads of the United States (New York, New Haven and Hartford Railroad)" answered and denied liability.

It appeared from the evidence that while moored at Pier 2, Erie Basin, March 28, 1919, the "Mary Ethel" suffered damage by contact with car float No. 46 of the New York, New Haven and Hartford Railroad, negligently cast loose by a New York Central Railroad tug. Both railroads and the tug were then being operated by the Director General.

The District Court found and held: "The last intervening cause of the accident which occurred to the 'Mary Ethel' was the fact that the New York Central came in and after removing the New York Central barge allowed the No. 46 to go adrift, but that fact will not relieve the Director General, operating the New York, New Haven and Hartford Railroad, from liability, inasmuch as he is the same entity that is operating the New York Central."

A decree for the libellant was affirmed by the Circuit Court of Appeals. It said—

"The contention of appellant is, that 'even though it be admitted that the New York Central tug was under the control and operation of the Director General of Railroads operating the New York Central Railroad, the Director General of Railroads operating the New Haven Railroad, being a separate and distinct person, is in no way responsible.'

"Appellant seeks to avoid the decision of this court in *Globe & Rutgers Fire Ins. Co.* v. *Hines, Agent,* 273 Fed. 774, by the effect, as he contends, of *Missouri Pacific Railroad Co.* v. *Ault,* 256 U. S. 554. . . . In our view, the opinion of the Supreme Court sustains the *Globe & Rutgers Fire Ins. Co. Case, supra.* . . .

"The sole point is that the outside litigant, such as this libellant, need look only to the Director General as the party to respond for damage caused by negligence on the part of any of the railroads which he was operating pursuant to the Federal Control Statutes."

We cannot accept the conclusion reached by the court below.

During the year 1919 the United States were in possession and complete control, by the Director General, of the important railroad systems throughout the country. *Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135. As the representative of the United States, he was subject to be sued for the purposes, to the extent and under the conditions prescribed by statute and orders issued thereunder—and not otherwise. *DuPont De Nemours & Co.* v. *Davis,* 264 U. S. 456.

Section 10 of the Federal Control Act, approved March 21, 1918, c. 25, 40 Stat. 451, 456, provides that carriers under federal control shall be subject to liability as common carriers under state and federal laws, and that in actions against them no defense shall be made upon the ground that the carrier is an instrumentality of the Federal Government.

General Order 50–A of the Director General, issued January 11, 1919, directs that actions at law, suits in equity or proceedings in admiralty growing out of operation of any system of transportation which might have been brought against the carrier but for federal control, shall be brought against the Director General, and not otherwise; that service of process may be made upon officials operating a railroad for the Director General as formerly permitted in actions against the road; and further, "the pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

The effect of § 10 and General Order 50–A were discussed in *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554, 560; and it was there pointed out that while the transportation systems were controlled and administered by the United States they were treated as separate entities, " regarded much as ships are regarded in admiralty," and " dealt with as active responsible parties answerable for their own wrongs."

As well pointed out in *Manbar Coal Co.* v. *Davis,* Circuit Court of Appeals, Fourth Circuit, 297 Fed. 24, no one was given the right to sue the Director General as operator of all railroads, but his liability was carefully limited to such as would have been incurred by some particular carrier if there had been no federal control.

Here the Director General came into court to defend only against a liability asserted because of the negligence of agents operating the New York, New Haven and Hartford system, and not because of anything which might have been done or omitted by those of another system. In such circumstances, under the statute and orders, we think the court could adjudge no liability against him except such as might have been enforced against the New York, New Haven and Hartford Railroad Company before federal control. Under those conditions the United States consented to be proceeded against. One reason therefor, if any is necessary, seems plain enough. Every system was operated as an entity; its agents and employees knew and carried on its ordinary affairs, but not those of other carriers. The Director General necessarily relied upon the organization of each system, and could demand notice sufficient to set the proper one in motion; otherwise proper defenses might not be presented.

*Reversed.*