WILSON & CO., Inc., OF OKLAHOMA, v.
DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Seventh Circuit.
October 10, 1925.)

No. 3569.

Railroads ⊙⟞5½, New, vol. 6A Key-No. Series
—Shipper, charged excessive freight during
federal control of railroads, held entitled to
recover so-called interest on reparation award
of Interstate Commerce Commission, but not
costs and attorney's fees ordered by Com-
mission to be paid.

Under Federal Control Act, § 10 (Comp.
St. 1918, Comp. St. Ann. Supp. 1919, §
3115¾j), and Transportation Act, § 206 (a),
(c), being Comp. St. Ann. Supp. 1923, §
10071¼cc, a shipper, charged excessive freight
rates during federal control of railroads, was
entitled to recover so-called interest on the
reparation award ordered by the Interstate
Commerce Commission to be paid pursuant to
Interstate Commerce Act, § 16 (Comp. St. §
8584), despite Judicial Code, § 177 (Comp. St.
§ 1168), but was not entitled to recover the
costs and attorney's fees ordered by the Com-
mission to be paid.

In Error to the District Court of the
United States for the Eastern Division of
the Northern District of Illinois.

Action by Wilson & Co., Inc., of Okla-
homa, against James C. Davis, as Director
General of Railroads. Judgment for plain-
tiff for partial relief only, and it brings er-
ror. Reversed, with directions.

While the railroads were operated by the
government during and shortly after the
World War, plaintiff made certain shipments
of hogs in interstate commerce, for which an
alleged exorbitant freight charge was col-
lected. Shipper petitioned the Interstate
Commerce Commission for relief, and a rep-
aration order was entered, after findings had
been made that the existing published tariffs
were excessive. The material portion of the
reparation award is as follows:

"It is therefore ordered that defendant,
James C. Davis, Director General of Rail-
roads, as Agent, be, and he is hereby, au-
thorized and directed to pay unto complain-
ant, Wilson & Co., Incorporated, of Okla-
homa, on or before April 18, 1924, the sum
of $2,841.97, with interest thereon at the
rate of 6 per cent. per annum from Febru-
ary 15, 1919, as reparation on account of
unreasonable rates charged for the transpor-
tation of numerous single-deck carloads of
hogs from Nashville, Tenn., to Oklahoma
City, Okl."

Immediately upon the entry of this order,
defendant offered to pay $2,841.97, the sum
which represented the difference between the
charge collected and the reasonable rate as
found by the Commission, but refused to pay
interest upon such sum, or attorney's fees.
An action in the District Court followed, and
judgment went for plaintiff, but interest and
attorney fees were denied. This writ in-
volves merely the question of a shipper's
right to recover the so-called interest upon
the award, and reasonable attorney's fees,
as provided for by section 16 of the Inter-
state Commerce Act (Comp. St. § 8584).

Nuel D. Belnap and Luther M. Walter,
both of Chicago, Ill., for plaintiff in error.

Alex M. Bull, of Washington, D. C., for
defendant in error.

Before ALSCHULER, EVANS, and AN-
DERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after
stating the facts as above). In approaching
the consideration of this question, we ac-
cept certain propositions as settled: (a)
The government acted in its sovereign capac-
ity when it "took over" and operated the
railroads. Dupont De Nemours v. Davis,
264 U. S. 456, 44 S. Ct. 364, 68 L. Ed. 788.
(b) As a sovereign, the government cannot
be sued without the consent of Congress.
Davis v. Donovan, 265 U. S. 257, 44 S. Ct.
513, 68 L. Ed. 1008. (c) The government's
liability is limited by the act of Congress
which authorizes suits to be brought, rather
than by the acts which ordinarily would cre-
ate the liability and determine its extent.
Davis v. Donovan, supra.

From the foregoing premises, defendant
argues that neither section 206 (c) of the
Transportation Act (Comp. St. Ann. Supp.
1923, § 10071¼cc), nor section 10 of the
Federal Control Act (Comp. St. 1918, Comp.
St. Ann. Supp. 1919, § 3115¾j) specifical-
ly provides for payment of interest on rep-
aration claims, and therefore liability is de-
nied.

Plaintiff in error, on the other hand, con-
tends: (a) That it was settled law when the
Transportation Act was enacted that interest
might be included on the reparation awards
as part of the damages, and recovered by
the shipper. International Agricultural Cor-
poration v. L. & N. R. R. Co., 29 Interst.
Com. Com'n R. 391; Shreveport Creosoting
Co. v. Louisiana & Pacific R. R. Co., 92
Interst. Com. Com'n R. 519. These rul-
ings of the Interstate Commerce Commission
were upheld by various courts. Pennsyl-
vania R. R. Co. v. Minds, 250 U. S. 368, 39
S. Ct. 531, 63 L. Ed. 1039; Louisville &
Nashville R. R. Co. v. Ohio Valley Tie Co.,
242 U. S. 288, 37 S. Ct. 120, 61 L. Ed. 305;

Arkadelphia Milling Co. v. St. Louis S. W. R. Co., 249 U. S. 134, 39 S. Ct. 237, 63 L. Ed. 517; Louisville & Nashville R. Co. v. Sloss-Sheffield S. & I. Co. (C. C. A.) 295 F. 53; C., M. & St. P. Ry. Co. v. Geo. Hormel & Co., 240 F. 381, 153 C. C. A. 307; Baer Bros. Mercantile Co. v. Denver & Rio Grande R. Co., 233 U. S. 479, 34 S. Ct. 641, 58 L. Ed. 1055; Meeker v. Lehigh Valley R. R. Co., 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Mills v. Lehigh Valley R. R. Co., 238 U. S. 473, 35 S. Ct. 888, 59 L. Ed. 1414; Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451; Pennsylvania R. R. Co. v. Weber, 257 U. S. 85, 42 S. Ct. 18, 66 L. Ed. 141. (b) Under the Transportation Act (section 206) and the Federal Control Act (section 10) the liability of the Director General was established and declared to be the same as that of the carrier prior to government operation, so far as liability to shippers was concerned.

From a consideration of these cases and the contention of counsel, it is apparent that liability, if it exists at all, must be traced to legislative enactment, and cannot be inferred or read into any act by implication. This conclusion, so far as it relates to "interest" upon claims against the government, is confirmed by an examination of section 177 of the Judicial Code (Comp. St. § 1168), which, we think, might fairly be said to announce the policy of the government respecting interest on all claims filed against it. See, also, United States v. Verdier, 164 U. S. 213, 218, 17 S. Ct. 42, 41 L. Ed. 407; Stanley v. Schwalby, 162 U. S. 255, 272, 16 S. Ct. 754, 40 L. Ed. 960.

Courts have likewise uniformly held that costs should not be taxed against the government, in the absence of a statute particularly authorizing their allowance. North American Trading Co. v. United States, 253 U. S. 330, 40 S. Ct. 518, 64 L. Ed. 935; In re Post Office Site of Borough of the Bronx, 210 F. 832, 127 C. C. A. 382. The question before us is therefore a narrow and limited one. Has the shipper met the burden which rests upon it in this case? Did the government intend to abandon its policy of refusing interest and costs in cases brought against it, and, more, did it give expression to such intention in the two acts under consideration?

So far as "interest" is concerned, we think plaintiff has successfully met the burden. In reaching this conclusion we assume that the Commission intended the so-called interest provision to be but a part of the damages. True, the word "interest" was used in the order, and the method of computing this item of damage was the usual one followed in computing interest. Nevertheless it was not allowed in the way of interest as such, but as a part of the damages. Section 10 of the Federal Control Act provides, among other things:

"Sec. 10. That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government."

"After full hearing the Commission may make such findings and orders as are authorized by the Act to Regulate Commerce as amended, and said findings and orders shall be enforced as provided in said act."

Section 206 of the Transportation Act reads:

"Sec. 206. (a) Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the Act of August 29, 1916) of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act. * * *

"Sec. 206. (e) Complaints praying for reparation on account of damage claimed to have been caused by reason of the collection or enforcement by or through the President during the period of federal control of rates, fares, charges, classifications, regulations, or practices (including those applicable to interstate, foreign, or intrastate traffic) which were unjust, unreasonable, unjustly discriminatory, or unduly or unreasonably prejudicial, or otherwise in violation of the Interstate Commerce Act, may be filed with the Commission, within one year after the ter-

mination of federal control, against the agent designated by the President under subdivision (a). * * * The Commission is hereby given jurisdiction to hear and decide such complaints in the manner provided in the Interstate Commerce Act, and all notices and orders in such proceedings shall be served upon the agent designated by the President under subdivision (a)."

A fair interpretation of these statutes, we think, demands a construction which continued (so far as possible) all existing rights, liabilities, and obligations of shippers and carriers. Under them the shipper was entitled to recover damages in case an excessive freight rate was charged and collected. Damages had been construed at the time of the enactment of this legislation to include as one element thereof, the value of the use of the money of which the shipper had been unlawfully deprived. We can hardly believe that the reparation authorized by section 206 (c) was different from the amount which the shipper was entitled to collect prior to the government's taking over the railroads.

Respecting costs and attorney's fees, we are satisfied that the shipper has not met the burden under which it labors. Costs and attorney's fees are not part of the damage. They relate to the remedy. The law was well settled at the time of this enactment that costs and attorney's fees against the government were not collectible. There is nothing in the statute which by implication or otherwise, modifies this rule. The allowance of attorney's fees in cases of this kind is in the nature of a penalty, and the President, through the Director General, very early promulgated an order (General Order No. 50) which denied liability for "fines, penalties and forfeitures." While the questions before us were not squarely presented in Missouri Pac. R. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087, and Dahn v. Davis, 258 U. S. 421, 42 S. Ct. 320, 66 L. Ed. 696, the announcements there made are sufficiently applicable to the facts in this case to be controlling. In the Ault Case, the court said:

"The purpose for which the government permitted itself to be sued was compensa- tion, not punishment. In issuing General Order No. 50, the Director General was careful to confine the order to the limits set by the act, by concluding the first paragraph of the order: 'Provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures.' Wherever the law permitted compensatory damages they may be collected against the carrier while under federal control. Such damages may reasonably include interest and costs. See Hines v. Taylor, 79 Fla. 218 [84 So. 381]. But double damages, penalties, and forfeitures, which do not merely compensate, but punish, are not within the purview of the statute. See Hines v. Taylor, supra; Jackson-Tweed Lumber Co. v. Southern Ry. Co., 113 S. C. 236 [101 S. E. 924]. The amount recovered in the present case over and above the wages due and unpaid with interest is in the nature of a punishment. It is called a penalty in the state statute. The Supreme Court of Arkansas had held that it was not technically a penalty, declaring: 'It is allowed for a double purpose, as a compensation for the delay, and as a punishment for the failure to pay. It is composed of all the elements and serves all the purposes of exemplary damages.' Leep v. Railway Co., 58 Ark. 407, 440, 441 [25 S. W. 75, 23 L. R. A. 264, 41 Am. St. Rep. 109]. But whether in a proceeding against the Director General it shall be deemed compensation or a penalty presents a question not of state, but of federal law. Whatever name be applied, the element of punishment clearly predominates and Congress has not given its consent that suits of this character be brought against the United States. The judgment against the Director General, so far as it provided for recovery of the penalty, was erroneous."

While it is true that the language used in the opinion respecting interest was dictum, we accept it as an authoritative pronouncement on the subject.

The judgment is reversed, with direction to enter one in plaintiff's favor for the sum fixed by the reparation order of the Interstate Commerce Commission, but without costs or attorney's fees.