**CORONA COAL CO. v. DAVIS, Agent.**

(District Court, E. D. Louisiana. October 24, 1925.)

No. 16904.

1. **Pleading ⬅228—For purpose of exception of no cause of action, allegations of petition are to be taken as true.**

For purpose of exception of no cause of action, allegations of petition are to be taken as true.

2. **Railroads ⬅5½, New, vol. 6A Key-No. Series—Cause of action held not one which prior to federal control, could have been brought against carrier.**

Cause of action against United States, based on plaintiff's contract to ship coal to a carrier, arising from the exercise by the United States government of its war powers or its right of eminent domain, either directly or through agencies other than the Railroad Administration, under Food and Fuels Act (Lever Act) § 25 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q) independently of and beyond either the contract or any act of Director General, *held* not a cause of action of such character as prior to federal control could have been brought against the carrier within the Transportation Act 1920, § 206(a), being Comp. St. Ann. Supp. 1923, § 10071¼cc.

At Law. Action by the Corona Coal Company against James C. Davis, as Agent for the President of the United States, etc. Judgment of dismissal ordered.

Richard B. Montgomery, of New Orleans, La., for plaintiff.

Monroe & Lemann and Walter J. Suthon, all of New Orleans, La., for defendant.

BURNS, District Judge. Plaintiff sues for an alleged balance of $17,794.47, with interest due for coal delivered to the United States Railroad Administration between December 31, 1917, and July 1, 1919. The suit is nominally against James C. Davis, Director General of Railroads, as Agent for the President, and arises out of plaintiff's coal contract with the Vicksburg, Shreveport & Pacific Railway, which contract was subsistent when the latter passed under federal control. The prayer is for a money judgment against the United States of America. It is brought under the provisions of section 206(a) of the Transportation Act of 1920, c. 91 (41 Stat. 456 [Comp. St. Ann. Supp. 1923, § 10071¼cc]), and is unquestionably a suit against the sovereign.

The Director General named as defendant, appearing by counsel solely for the purpose, filed an exception of no cause or right of action, which has been argued and submitted. In support of the exception, defendant ar-

gues that, since the United States cannot be sued without its consent and upon such terms and under such conditions as Congress may prescribe, the asserted cause of action must come within section 206(a) of the Transportation Act; that, assuming the cause of action alleged in the petition, if any there is, to have arisen out of the possession, use, or operation by the President of the Vicksburg, Shreveport & Pacific Railway, described as the original party to the contract in the petition, it must also clearly appear that the action is of such character as prior to federal control could have been brought against such carrier; that the effect of federal control has been considered in numerous cases, and many points having a bearing upon this case have been decided. They cite, among others, Davis v. Dantzler Lumber Co., 261 U. S. 280, 43 S. Ct. 349, 67 L. Ed. 654, 28 A. L. R. 834, Davis v. Donovan, 265 U. S. 257, 263, 44 S. Ct. 513, 68 L. Ed. 1008, Davis v. O'Hara, 266 U. S. 316, 45 S. Ct. 104, 69 L. Ed. 303, making special reference among others to the Donovan Case above cited, where the Manbar Coal Company Case (C. C. A.) 297 F. 24, was cited to the effect that no one was given the right to sue the Director General as operator of all the railroads, but his liability was carefully limited to such acts as would have been incurred by some particular carrier if there had been no federal control. His liability is limited to such acts as he did or did not do as the director of a particular carrier. Every railroad system was taken over as an entity. They point also to the Mo. Pac. R. Co. v. Ault Case, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087, holding that federal control was analogous to a general receivership of each railroad system. The President took over the physical properties and placed them under a single head, but they were taken over as entities, and they were always dealt with as such.

Defendant contends that, since the status of the Director General was analogous to that of a receivership, he had a right as such to adopt and enforce an executed contract or a partially executed contract such as the one sued upon here. There was a further citation of the Quincy, M. & P. R. R. v. Humphreys, 145 U. S. 62, 12 S. Ct. 787, 36 L. Ed. 632; Sunflower Oil Co. v. Wilson, 142 U. S. 313, 322, 12 S. Ct. 235, 35 L. Ed. 1025. They point to several decisions in which it has been held specifically that the Director General or the Railroad Administration succeeded during federal control to the contract rights of the various carriers

(Payne v. National Transit Co. [D. C.] 300 F. 411, 414; G., C. & S. F. R. R. v. Cities Service Co. [D. C.] 273 F. 946, 949, citing No. Pac. Ry. Co. v. North Dakota, 250 U. S. 135, 148, 39 S. Ct. 502, 63 L. Ed. 897; Davis v. A. F. Gossett & Sons, 30 Ga. App. 576, 118 S. E. 773), all to the effect that the Railroad Administration stood in the place of the railway companies in the matter of their contracts.

The plaintiff, arguing the exception, contends that the United States government through the Railroad Administration "grabbed" the contract, but "only in so far as to take the coal and attempt to pay for it at the low price given the railroad under special conditions and for other consideration and returns; that the contracts were not assigned to the United States; that they were not assignable without plaintiff's consent." Pointing to the allegations of the petition, plaintiff contends that the condition in relation to hours, wages, and conditions of labor, the cost of production, distribution of coal, and other such changes incident to federal control and the exercise of the government's war power, placed upon it an onerous burden not contemplated by the contract. Plaintiff cites Williston on Contracts, § 405 et seq., and other authorities.

[1, 2] For the purpose of the exception, the allegations of the petition must be taken as true, and, if these allegations so assumed to be true would not sustain a verdict and judgment for the amount claimed, then the petition of course recites no cause or right of action. It is to be noted that the petition must stand or fall when tested by section 206(a) of the Transportation Act. The amount exceeds $10,000, and is therefore beyond the jurisdiction of this court concurrent with the Court of Claims, as established by paragraph 20, § 24, of the Judicial Code (Comp. St. § 991). Likewise, there is nothing in the petition to indicate a submission of the dispute to the Federal Trade Commission or any other compliance with section 25 of the Food and Fuels Act (Lever Act, 40 Stat. 276 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q]), approved August 10, 1917, and therefore it is not in the class of controversies dealt with in section 10 of that act (section 3115⅛kk).

A careful reading of the petition shows: (1) That in so far as the contract is concerned, the obligations thereof were executed on both sides. The seller delivered the approximate quantity of coal contemplated by the contract, and the buyer paid the price contemplated by the contract, including the sliding scale prescribed by its terms to cover increased labor costs. As between the coal company and the Railroad Administration (standing in the shoes of the railway company), there is no allegation showing that the Railroad Administration did or failed to do anything in respect to the obligations of the contract which, if done by the railroad company, independent of federal control, would have amounted to a breach of contract, or, in the language of section 206(a) of the Transportation Act, give rise to a "cause of action of such character as prior to federal control could have been brought against such carrier."

The specific matters complained of in the petition, when not expressed in too ambiguous terms, are charged as the acts of the government in the exercise of its war powers, or its right of eminent domain, either directly or through agencies other than the Railroad Administration, which quoad this particular coal company and particular railroad company insisted upon nothing more than a compliance on plaintiff's part with the terms of the contract just as the railroad company itself might have done and had a right to do.

The specific averments of the plaintiff are in effect an admission that it ignored the insistent demands of the Railroad Administration and actually suspended shipments to it. The shipments were suspended by plaintiff, according to these allegations, until it was "peremptorily required by the United States Fuel Administration to continue such shipments, accompanied by the threat and warning that the failure to make shipments in accordance with the orders of the United States Fuel Administration, notwithstanding the question in dispute as to the right of the United States to enforce said contracts, would be dealt with as a violation of the orders of the Fuel Administration and would subject petitioner to the penalties prescribed by the so-called Fuel and Food Acts of Congress."

The conclusion seems to follow from this cardinal allegation of the petition that the cause of action, if any, arises independent of and beyond either the contract or any act of the Director General, and from this it seems necessary to conclude that the action is not "of such character as prior to federal control could have been brought against such carrier."

Accordingly, the exception will be sustained, and there will be judgment in favor of defendant, dismissing plaintiff's suit at its cost.