(108 So. 405)

No. 27616.

## LUCKETT & HUNTER v. TEXAS & P. R. CO. et al.

### In re LUCKETT & HUNTER.

(March 1, 1926.  Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error** ⚖️➦833(5)—**To ask again for rehearing, litigant must bring himself within reservation subject to which rehearing was refused (Const. 1921, art. 7, § 27; Code Prac. art. 912; Supreme Court rule XIV, § 4).**

Court of Appeal may refuse rehearing subject to specified reservations, and, to ask again for rehearing, litigant must bring himself within such reservation, in view of Const. 1921, art. 7, § 27, Code Prac. art. 912, and Supreme Court rule XIV, § 4 (136 La. xii).

2. **Appeal and error** ⚖️➦833(5)—**Granting of rehearing and judgment thereon for applicant, conceding that he was not within reservation, subject to which former application was refused, held unauthorized.**

Where Director General, after refusal of his application for rehearing subject to reservation that, if he claimed he was not operating certain railroad at certain time, application would be further considered, conceded that he was operating such road at time stated and set up other reasons for rehearing, granting thereof and judgment for Director General thereon were unauthorized.

3. **Certiorari** ⚖️➦3—**Granting of writ of certiorari or review held not precluded by applicants' failure to ask for second rehearing in Court of Appeal after reversal of judgment for them on rehearing (Const. 1921, art. 7, § 11; Supreme Court rule XIV, § 4, rule 16, § 2).**

Const. 1921, art. 7, § 11, and Supreme Court rule XVI, § 2, do not preclude granting of writ of certiorari or review because of applicants' failure to ask for second rehearing in Court of Appeal after reversal of judgment for them on rehearing without reservation of right to make another application, in view of rule XIV, § 4 (136 La. xii).

Suit by Luckett & Hunter against the Receivers of the Texas & Pacific Railroad Company and James C. Davis, Director General of Railroads. Judgment against the Di-

rector General was reversed on second rehearing by the Court of Appeal, and plaintiffs applied for writ of certiorari or review, which was granted. Granting of second rehearing and judgment thereon annulled, and judgment affirming judgment for plaintiffs reinstated.

Provosty & West, of Alexandria, for plaintiffs.

Peterman, Dear & Peterman, of Alexandria, and Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for respondents.

OVERTON, J.  Plaintiffs instituted this suit against the receivers of the Texas & Pacific Railway Company and the Director General of Railroads, alleging that they (plaintiffs) purchased in New Orleans, from the M. Glaser Horse & Mule Exchange, 19 mules and 4 horses, and shipped the mules and horses from New Orleans to Alexandria, La., consigned to themselves, over the Texas & Pacific Railroad, a railroad which, it is alleged, was in charge of the Director General of Railroads, and was operated by receivers named; that the 23 mules and horses were delivered in good condition to said railroad; that the entire shipment arrived at Alexandria a day or two later, with the exception of one mule, which did not arrive until some 20 days after the arrival of the remaining stock; that, when the mule did arrive, it arrived in a damaged and bruised condition; that despite all of the care and attention bestowed upon it by plaintiffs the mule died as a result of the injuries received; that the mule was injured as a result of the carelessness and negligence of defendants, who had full care, custody, and control of the mule from the time it was delivered for shipment until the time it arrived at Alexandria; that they, plaintiffs, are entitled to $75 for services in caring for the mule, $50 for special feeds and medicines given it, $275 for the value of the

mule, and $50 penalty because of the refusal of defendants to pay the foregoing claim. The prayer of the petition is for judgment against James C. Davis, Director General of Railroads, and against' the receivers of the Texas & Pacific Railroad Company accordingly, with legal interest on the amount sued for from May 7, 1920, until paid.

The suit, as against the receivers, was dismissed on an exception of 'no cause of action, for the reason that, at the time the shipment was made, the Texas & Pacific Railroad Company was under federal control. The Director General of Railroads, as agent, appeared and filed his answer. The suit was thereafter conducted against the Director General.

The evidence adduced on the trial shows that the mule was loaded on February 25, 1920, on a car at the Press Street stock pens of the New Orleans & Northeastern Railway Company in New Orleans, to be switched to its connection with the Texas & Pacific Railroad for shipment to Alexandria. It was carried over the lines of the New Orleans & Northeastern Railway Company, the Public Belt, and Trans-Mississippi Terminal Railroad Company, and delivered to the Texas & Pacific Railroad Company.

The car was defective, having the clip or hasp on the bottom of the door broken. The condition of the car was observed by a member of the firm from whom plaintiffs bought the mule, and by one of the plaintiffs, and the attention of an employee of the New Orleans & Northeastern Railway Company was called to it, and he promised to repair the defect, but did not do so.

The car was moved over the tracks of the New Orleans & Northeastern Railway Company, delivered to the Public Belt, which issued a receipt for it, entitling the shipper to a bill of lading on the presentation of the receipt to the Texas & Pacific Railroad Company, and was finally delivered to that company. While the mule was being transported from the stock pen, where it was loaded, to the Texas & Pacific Railroad Company, the mule's foot got caught between the floor and the door of the car so firmly that the leg of the mule was seriously injured.

When the mule reached the Texas & Pacific Railroad Company, the employees of that road noticed the predicament that the mule was in, and with some difficulty extricated its foot. The company gave the mule attention, and, some nine or ten days later, transported it to plaintiffs at Alexandria.

The mule died shortly afterwards. The only bill of lading issued was issued by the Texas & Pacific Railroad Company, and was for the 19 mules and 4 horses. The bill contained a provision limiting the liability of the company to $150 a head, the stated value of each horse and mule, and also a clause providing that the company should not be liable for injury to or for the death of live stock unless the injury or death should be caused by the negligence of the company.

The district court rendered judgment against defendant James C. Davis, Director General of Railroads, for $150, with legal interest thereon from judicial demand until paid.

The case was appealed to the Court of Appeal for the Second circuit. That court took the view on the first hearing of the appeal that the bill of lading covered the shipment from the time that it was loaded on the car of the New Orleans & Northeastern Railroad Company at the switch of that company; that the Texas & Pacific Railroad Company, through the Director General of Railroads, was liable for the injury and death, under the bill of lading, and affirmed the judgment of the district court.

The Director General applied for a rehearing. In passing upon the application, the Court of Appeal went fully into the facts of the case, finding them substantially and to

a large extent, literally, as stated above. The court found in effect, in passing upon this application, that the injury to the mule was caused by the fault and negligence of the agents and employees of the New Orleans & Northeastern Railway Company, but treated the suit as one against the Director General, without reference to what particular roads he was operating; took judicial cognizance that he was operating the New Orleans & Northeastern Railroad, held that the transportation of the mule by the Director General began, not when he issued the bill of lading, but when the mule was loaded at the New Orleans & Northeastern stock pen, held that he was negligent in loading the mule in a car which was defective, held that the judgment of the district court, allowing $150 to plaintiff did substantial justice between the parties, and entered the following decree with reference to the application, to wit:

"Rehearing refused,· but right reserved to the Director General to apply for a second rehearing if he claim that at the time the mule was loaded at the stock pen of the New Orleans & Northeastern Railroad he was not operating that railroad."

The Director General applied the second time for a rehearing, but did not disclaim that he was operating the New Orleans & Northeastern Railroad when the mule was loaded on the car, but, to the contrary, conceded that fact, and took the position that, under the facts as found by the court on the application for rehearing, he, as operating the Texas & Pacific Railroad, could not be held liable for an injury resulting from his negligence, if he were guilty of negligence, while operating the New Orleans & Northeastern Railroad. In this application for a rehearing the Director General called the court's attention to the case of Davis, Director General of Railroads, v. Donovan et al., 44 S. Ct. 513, 265 U. S. 257, 68 L. Ed. 1008, the syllabus of which reads:

"Under Federal Control Act, § 10 (Comp. St. Ann. Supp. 1919, § 3115¾j), Director General of Railroads, when sued for negligence of his servants operating particular railroad, could not be held liable for acts and omissions of those of another railroad system, since, as Director General of certain railroad, no liability could be adjudged against him, except such as might have been adjudged against such railroad before federal control."

The court granted the rehearing, notwithstanding the restriction placed on a second application for rehearing, stated above. On the rehearing the court applied the ruling made in the Donovan Case to the facts found by it on the application for rehearing, reversed the judgment of the lower court, and rejected plaintiffs' demand.

Plaintiffs then applied to this court for a writ to have the decision rendered reviewed. The writ was granted. Their complaint is, among others, that the Director General did not bring himself within the condition precedent to a second application for rehearing, as prescribed by the court, in that he did not claim that the New Orleans & Northeastern Railroad was not operated by him, and hence that the. court exceeded its powers in granting a rehearing, after having refused one, unless the Director General did bring himself within the limitation imposed.

If the court exceeded its powers in entertaining the second application for a rehearing, by granting the application, and rendering on the rehearing a judgment different from the first one rendered, it follows that the judgment rendered on the rehearing must be set aside.

[1] Section 27 of article 7 of the Constitution provides in part that:

"The rules of practice regulating appeals to and proceedings in the Supreme Court shall apply to appeals and proceedings in the Courts of Appeal, so far as they may be applicable, until otherwise provided."

We know of no provision to the contrary —at least, in so far as concerns the issue here under consideration. Article 912 of the

Code of Practice, found under the title or chapter regulating proceedings in the Supreme Court, provides that:

"In the interval between the day on which the judgment is rendered and that on which it becomes final, a party dissatisfied with the judgment may apply * * * for a new hearing in the cause. * * *"

Section 4 of rule XIV of this court (136 La. xii), which is applicable to rehearings in the Courts of Appeal, provides that:

"Only one rehearing shall be granted, unless some question has been decided, on the rehearing granted, which had not, before, been considered, and the court has reserved the right to make another application."

In the case at bar the rule of court cited is not directly applicable, for only one rehearing was granted, but the rule nevertheless has a tendency to show the limitation on the number of rehearings that may be granted, and necessarily to show the limitation on the number of applications for rehearing that may be made. There is nothing in the statutory law or the rules of court of which we have knowledge that contemplates the granting of a rehearing at the instance of a litigant whose application for one has been refused—at least, where it has been advisedly and deliberately, and not inadvertently refused. Were it otherwise a judgment rendered might never become final. We entertain no doubt, however, that in refusing a rehearing the court may refuse it subject to a specified reservation. But, in order to ask the second time for the rehearing, the litigant must bring himself within the reservation, for the rehearing is deemed refused, and the powers of the court exhausted as to it, in all other respects and under all other conditions.

[2] In the case before us, the rehearing, as we have seen, was refused, subject only to the reservation that, should the Director General claim that he was not operating the New Orleans & Northeastern Railroad at the time the mule was loaded on the car, then another application would be considered, or, more strictly speaking, the application would be further considered. When the Director General appeared and frankly conceded that he was operating the road mentioned at the time stated, but set up other reasons why a rehearing should be granted, there remained nothing for the court to do, under the terms of the reservation, but to refuse the rehearing. It had exhausted its powers with reference to the only matter submitted to it for consideration, and there was nothing else left for it to do. It follows, therefore, that the granting of the rehearing and the judgment rendered thereon will have to be set aside and the judgment first rendered reinstated.

[3] Before closing, however, it is necessary to consider an exception to the granting of the writ of review issued herein. The Director General excepts to the granting of the writ, and takes the position that it should be recalled because plaintiffs did not exhaust their remedies in the Court of Appeal by asking for a rehearing. The Director General cites section 11 of article 7 of the Constitution, which provides, among other things, "That the Supreme Court shall in no case exercise the power conferred by this article" (i. e., power to review a decision of the Court of Appeal) "unless the application shall have been made to the court or to one of the justices thereof within thirty days after a rehearing shall have been refused by the Court of Appeal," thus implying that a rehearing must be asked for and refused. He also cites section 2 of rule XVI of this court, which provides that:

"The petition for the writ of certiorari or review to a Court of Appeal * * * shall also show that an application for rehearing has been made to such Court of Appeal; that the rehearing has been refused, with the date of the refusal. * * *"

He also cites, to the same effect, Colomb v. Rolling, 30 So. 293, 106 La. 37; Milwaukee Trust Co. v. Germania Insurance Co., 31 So. 298, 106 La. 669; Harrison v. Ottman, 35 So. 844, 111 La. 730; and Kinchen v. Redmond, 100 So. 607, 156 La. 418. The jurisprudence cited supports the general doctrine contended for by the Director General. However, the article of the Constitution, the rule of court, and the jurisprudence cited presuppose that the case is one in which a rehearing might have been asked for by the applicant for the writ. There are instances in which a rehearing cannot be asked for by the party cast. We have seen that, under section 4 of rule XIV of this court, quoted above, which is applicable to rehearings in the Court of Appeal, only one rehearing may be granted unless the court has reserved the right to make another application. The court, in rendering its judgment, reserved no such right. Hence, plaintiffs had no right to ask for a rehearing, and therefore such an application was not required of them.

For the reasons assigned, it is ordered, adjudged, and decreed that the granting of said rehearing by the Court of Appeal and the judgment rendered thereon be annulled and set aside, and that the judgment first rendered by said court, which is one affirming the judgment of the trial court, be reinstated.